YOUNG, C.J.
In this public nuisance action, we must determine whether defendants’ business, which facilitates patient-to-patient sales of marijuana, operates in accordance with the provisions of the Michigan Medical Marihuana Act (MMMA).[1] We hold that it does not and that, as a result, the Court of Appeals reached the correct result when it ordered that defendants’ business be enjoined as a public nuisance.
The MMMA authorizes “[t]he medical use of marihuana ... to the extent that it is carried out in accor *141 dance with the provisions of [the] act.”[2] Section 3(e) of the act defines “medical use” broadly to include the “transfer” of marijuana “to treat or alleviate a registered qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition.”[3] Because a transfer is “\a\ny mode of disposing of or parting with an asset or an interest in an asset, including . . . the payment of money,”[4] the word “transfer,” as part of the statutory definition of “medical use,” also includes sales. The Court of Appeals erred by concluding that a sale of marijuana was not a medical use.
Nevertheless, the immunity from arrest, prosecution, or penalty provided to a registered qualifying patient in § 4 of the MMMA for engaging in the medical use of marijuana can be rebutted upon a showing “that conduct related to marihuana was not for the purpose of alleviating the qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition, in accordance with this act.”[5] Be-cause the MMMA’s immunity provision clearly contemplates that a registered qualifying patient’s medical use of marijuana only occur for the purpose of alleviating his own debilitating medical condition or symptoms associated with his debilitating medical condition, and not another patient’s condition or symptoms, § 4 does not authorize a registered qualifying patient to transfer marijuana to another registered qualifying patient. Accordingly, while the Court of Appeals erred by exclud *142 ing sales from the definition of “medical use,” we affirm on alternative grounds its conclusion that the MMMA does not contemplate patient-to-patient sales of marijuana for medical use and that, by facilitating such sales, defendants’ business constituted a public nuisance.
I. FACTS AND PROCEDURAL HISTORY
Defendants Brandon McQueen and Matthew Taylor own and operate C.A., LLC (hereinafter CA), formerly known as Compassionate Apothecary, LLC, a members-only medical marijuana dispensary located in Isabella County. McQueen is both a registered qualifying patient and a registered primary caregiver within the meaning of the MMMA,[6] while Taylor is a registered primary caregiver. Their stated purpose in operating CA is to “assist in the administration of [a] member patient’s medical use” of marijuana.
CA requires every member to be either a registered qualifying patient or registered primary caregiver pursuant to § 6 of the MMMA and to possess a valid, unexpired medical marijuana registry identification card from the Michigan Department of Community Health (MDCH).[7] CA’s basic membership fee of $5 a month allows a member to access CA’s services. For an additional fee, a member can rent one or more lockers *143 to store up to 2.5 ounces of marijuana and make that marijuana available to other CA members to purchase.[8] The member sets the sale price of his marijuana,[9] and defendants retain a percentage of that price (about 20 percent) as a service fee. Defendants and their employees retain access at all times to the rented lockers, although the member may remove his marijuana from the lockers during business hours if he no longer wishes to make it available for sale.[10]
All CA members may purchase marijuana from other members’ lockers.[11] A member who wishes to purchase marijuana for himself (or, if the member is a registered primary caregiver, for his patient) must show his unexpired MDCH qualifying patient or primary caregiver registry identification card when entering CA. A representative of CA — either one of the individual defendants or an employee — will then take the member to the display room, where a variety of strains are available for purchase.[12] The member makes a selection, and the CA representative measures and weighs the marijuana, packages it, seals it, and records the transaction.
CA opened for business in May 2010. In July 2010, the Isabella County Prosecuting Attorney, on behalf of the state of Michigan, filed a complaint in the Isabella *144 Circuit Court, alleging that defendants’ business constitutes a public nuisance because it does not comply with the MMMA. The complaint sought a temporary restraining order, a preliminary injunction, and a permanent injunction. After holding a two-day evidentiary hearing, the circuit court denied plaintiffs request for a preliminary injunction. The court found that defendants “properly acquired registry identification cards,” that they “allow only registered qualifying patients and registered primary caregivers to lease lockers,” and that the patients or caregivers possess permissible amounts of marijuana in their lockers. Moreover, the court found that defendants themselves “do not possess amounts of marihuana prohibited by the MMMA.”
The court further determined that “the registered qualifying patients and registered caregivers perform medical use of the marihuana by transferring the marihuana within the lockers to other registered qualifying patients and registered primary caregivers.” The court noted that plaintiff had “failed to provide any evidence that defendants’ medical marihuana related conduct was not for the purpose of alleviating any qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition.” As a result, “the patient-to-patient transfers and deliveries of marihuana between registered qualifying patients fall soundly within medical use of marihuana as defined by the MMMA.” The court then determined that § 4 of the MMMA expressed the intent “to permit. .. patient-to-patient transfers and deliveries of marihuana between registered qualifying patients in order for registered qualifying patients to acquire permissible medical marihuana to alleviate their debilitating medical conditions and their respective symptoms.” Finally, it noted that “ [essentially, defendants *145 assist with the administration and usage of medical marihuana, which the Legislature permits under the MMMA.”[13]
The Court of Appeals reversed the circuit court’s decision and remanded for entry of judgment in favor of plaintiff.[14] The Court concluded that two of the circuit court’s findings of fact were clearly erroneous. First, it concluded that possession of marijuana is not contingent on having an ownership interest in the marijuana and that, because “defendants exercise dominion and control over the marijuana that is stored in the lockers,” they “possess the marijuana that is stored in the lockers.”[15] Second, the Court concluded that defendants were engaged in the selling of marijuana because defendants (or their employees) “intend for, make possible, and actively engage in the sale of marijuana between CA members,” even though they do not themselves own the marijuana that they sell.[16]
The Court concluded that the MMMA does not allow patient-to-patient sales. After noting that the MMMA “has no provision governing the dispensing of marijuana,”[17] the Court explained that the definition of “medical use” does not encompass the sale of marijuana, because it only allows the “delivery” and “transfer” of marijuana, not its sale, which “consists of the delivery or transfer plus the receipt of compensation.”[18] In reaching this conclusion, the Court reasoned that *146 § 4(e), which allows a caregiver to receive compensation but mandates that “[a]ny such compensation shall not constitute the sale of controlled substances,”[19] would be unnecessary if the definition of “medical use” encompassed sales.[20] Finally, the Court noted that defendants are not entitled to immunity under § 4(i) of the MMMA, which insulates from liability someone who assists a registered qualifying patient “with using or administering marihuana.”[21] It explained that “[t]here is no evidence that defendants assist patients in preparing the marijuana to be consumed” or that they “physically aid the purchasing patients in consuming marijuana.”[22] As a result, it concluded that plaintiff was entitled to a preliminary injunction, and it reversed the circuit court’s ruling.
This Court granted defendants’ application for leave to appeal and requested that the parties brief “whether the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 et seq., permits patient-to-patient sales of marijuana.”[23]
II. STANDARD OF REVIEW
We review for an abuse of discretion the decision to deny a preliminary injunction,[24] but we review de novo questions regarding the interpretation of the MMMA,[25] which the people enacted by initiative petition in No *147 vember 2008.[26] “[T]he intent of the electors governs” the interpretation of voter-initiated statutes,[27] just as the intent of the Legislature governs the interpretation of legislatively enacted statutes.[28] The first step in interpreting a statute is to examine the statute’s plain language, which provides “ ‘the most reliable evidence of... intent ....’ ”[29] “If the statutory language is unambiguous, ... ‘[n]o further judicial construction is required or permitted’ ” because we must conclude that the electors “ ‘intended the meaning clearly expressed.’ ”[30]
A trial court’s findings of fact may not be set aside unless they are clearly erroneous.[31] A ruling is clearly erroneous “if the reviewing court is left with a definite and firm conviction that the trial court made a mistake.”[32]
III. ANALYSIS AND APPLICATION
In this nuisance action, we must examine whether the MMMA allows the patient-to-patient sales that defendants facilitate or, instead, whether plaintiff is entitled to an injunction pursuant to MCL 600.3801.
At the time this action was brought, MCL 600.3801 stated that “[a]ny building. . . used for the unlawful *148 manufacture, transporting, sale, keeping for sale, bartering, or furnishing of any controlled substance as defined in [MCL 333.7104] ... is declared a nuisance . .. .”[33] Marijuana is a controlled substance as defined in MCL 333.7104. However, because “[t]he medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with [the MMMA],”[34] the MMMA controls whether defendants’ business constitutes a public nuisance.
This Court first interpreted the MMMA in People v Kolanek and explained:
The MMMA does not create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law. Rather, the MMMA’s protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals’ marijuana use “is carried out in accordance with the provisions of [the MMMA].”[35]
In contrast to several other states’ medical marijuana provisions,[36] the MMMA does not explicitly provide for *149 businesses that dispense marijuana to patients. Nevertheless, defendants claim that § 3(e) of the MMMA allows their business to facilitate patient-to-patient sales of marijuana. The Court of Appeals disagreed and held that the term “medical use,” defined in § 3(e), does not encompass sales. We turn now to this provision.
A. “MEDICAL USE” OF MAKIJUANA
As stated, § 7(a) of the MMMA provides that “[t]he medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with the provisions of [the MMMA].” The MMMA specifically defines “medical use” in § 3(e) as
the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition.[37]
At issue in this case is whether the sale of marijuana is an activity that falls within this definition of “medical use.” The definition specifically incorporates nine activities relating to marijuana as “medical use,” but it does not expressly use the word “sale.” Because of this omission, plaintiff argues, and the Court of Appeals held, that the sale of marijuana falls outside the statutory definition of “medical use”:
*150 [T]he sale of marijuana is not equivalent to the delivery or transfer of marijuana. The delivery or transfer of marijuana is only one component of the sale of marijuana — the sale of marijuana consists of the delivery or transfer plus the receipt of compensation. The “medical use” of marijuana, as defined by the MMMA, allows for the “delivery” and “transfer” of marijuana, but not the “sale” of marijuana. MCL 333.26423(e). We may not ignore, or view as inadvertent, the omission of the term “sale” from the definition of the “medical use” of marijuana.[38]
Defendants claim that the Court of Appeals erred by excluding sales from the definition of “medical use.”
In determining whether a sale constitutes “medical use,” we first look to how the MMMA defines the term “medical use.” In particular, the definition of “medical use” contains the word “transfer” as one of nine activities encompassing “medical use.” The MMMA, however, does not itself define “transfer” or any of the other eight activities encompassing “medical use.” Because undefined terms “shall be construed and understood according to the common and approved usage of the language,”[39] it is appropriate to consult dictionary definitions of terms used in the MMMA.[40]
A transfer is “[a]ny mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance.”[41] Similarly, a sale is “[t]he transfer of property or title for a price.”[42] Given these *151 definitions, to state that a transfer does not encompass a sale is to ignore what a transfer encompasses. That a sale has an additional characteristic, distinguishing it from other types of transfers, does not make it any less a transfer, nor does that additional characteristic require that the definition of “medical use” separately delineate the term “sale” in order for a sale to be considered a medical use.
Nor do other provisions of the MMMA limit the definition of “medical use” to exclude sales. For instance, § 4(e) allows a registered primary caregiver to “receive compensation for costs associated with assisting a registered qualifying patient in the medical use of marihuana,” but states that “[a]ny such compensation shall not constitute the sale of controlled substances.”[43] While this section specifically contemplates that a registered qualifying patient may compensate his caregiver, it does not narrow the word “transfer” as used in the § 3(e) definition of “medical use.”[44] Rather, § 4(e) independently describes the relationship between a registered caregiver and his registered qualifying patient and provides an additional protection for the patient-caregiver relationship by emphasizing that it is not a criminal act for a registered qualifying patient to compensate a registered primary caregiver for costs associated with providing marijuana to the patient.[45]
Additionally, § 4(k) establishes criminal sanctions for a patient or caregiver “who sells marihuana to someone who is not allowed to use marihuana for medical *152 purposes under [the MMMA] . . . .”[46] This provision is also irrelevant to understanding the definition of “medical use” in § 3(e). Any transfer to a person who is “not allowed to use marihuana for medical purposes”[47] — whether for a price or not — is already specifically excluded from the definition of “medical use,” which requires a medical use to have the specific purpose to “treat or alleviate a registered qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition.”[48] Thus, rather than inform the definition of “medical use,” § 4(k)[49] simply provides an additional criminal penalty for certain actions that already fall outside the definition of “medical use” and that are already barred under the Public Health Code.[50]
Therefore, we hold that the definition of “medical use” in § 3(e) of the MMMA includes the sale of marijuana. The Court of Appeals erred by concluding otherwise, and we reverse that portion of the Court of Appeals’ judgment defining “medical use.” Nevertheless, this definition of “medical use” only forms the beginning of our inquiry. Section 7(a) of the act requires any medical use of marijuana to occur “in accordance with the provisions of [the MMMA].” That limitation requires this Court to look beyond the definition of “medical use” to determine whether defendants’ business operates “in accordance with the provisions of [the *153 MMMA].”[51] Absent a situation triggering the affirmative defense of § 8 of the MMMA,[52] § 4 sets forth the requirements for a person to be entitled to immunity for the “medical use” of marijuana. It is entitlement to that immunity — not the definition of “medical use”— that demonstrates that the person’s medical use of marijuana is in accordance with the MMMA. Therefore, we turn to § 4 to determine whether patient-to-patient sales are entitled to that section’s provision of immunity.
B. SECTION 4 IMMUNITY
Section 4(a) of the MMMA grants a “qualifying patient who has been issued and possesses a registry identification card”[53] immunity from arrest, prosecution, or penalty “for the medical use of marihuana in accordance with this act. . . .”[54] Similarly, § 4(b) grants the same immunity from arrest, prosecution, or penalty *154 to “[a] primary caregiver who has been issued and possesses a registry identification card . . . for assisting a qualifying patient to whom he or she is connected through the [MDCH’s] registration process with the medical use of marihuana in accordance with this act____”[55]
Furthermore, § 4(d) creates a presumption of medical use, which informs how § 4 immunity can be asserted or negated:
There shall be a presumption that a qualifying patient or primary caregiver is engaged in the medical use of marihuana in accordance with this act if the qualifying patient or primary caregiver:
(1) is in possession of a registry identification card; and
(2) is in possession of an amount of marihuana that does not exceed the amount allowed under this act. The presumption may be rebutted by evidence that conduct related to marihuana was not for the purpose of alleviating the qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition, in accordance with this act.[56]
Because § 4(d) creates a presumption of medical use and then states how that presumption may be rebutted, we conclude that a rebutted presumption of medical use renders immunity under § 4 of the MMMA inapplicable.
*155 The text of § 4(d) establishes that the MMMA intends to allow “a qualifying patient or primary caregiver” to be immune from arrest, prosecution, or penalty only if conduct related to marijuana is “for the purpose of alleviating the qualifying patient’s debilitating medical condition” or its symptoms. Section 4 creates a personal right and protection for a registered qualifying patient’s medical use of marijuana, but that right is limited to medical use that has the purpose of alleviating that patient’s own debilitating medical condition or symptoms. If the medical use of marijuana is for some other purpose — -even to alleviate the medical condition or symptoms of a different registered qualifying patient — then the presumption of immunity attendant to the “medical use” of marijuana has been rebutted.
The dissent claims that the presumption of immunity attendant to the “medical use” of marijuana applies when a qualifying patient transfers marijuana to another qualifying patient. However, the dissent’s construction is not consistent with the statutory language that the people of Michigan actually adopted.[57] The presumption that “a qualifying patient” is engaged in the medical use of marijuana under § 4(d) is rebutted when marijuana-related conduct is “not for the purpose of alleviating the qualifying patient’s debilitating medical condition . . . .” Contrary to the dissent’s conclusion *156 that § 4(d) only requires “one of the two qualified patients involved in the transfer of marijuana [to] have a debilitating medical condition that the transfer of marijuana purports to alleviate,”[58] the definite article in § 4(d) refers to the qualifying patient who is asserting § 4 immunity, not to any qualifying patient involved in a transaction. While the introductory language of § 4(d) refers to “a” qualifying patient, that indefinite article simply means that any qualifying patient may claim § 4(d) immunity, as long as the marijuana-related conduct is related to alleviating “the” patient’s medical condition.
Thus, § 4 immunity does not extend to a registered qualifying patient who transfers marijuana to another registered qualifying patient for the transferee’s use[59] because the transferor is not engaging in conduct related to marijuana for the purpose of relieving the transferor’s own condition or symptoms.[60] Similarly, § 4 immunity does not extend to a registered primary caregiver who transfers marijuana for any purpose other than to alleviate the condition or symptoms of a specific patient with whom the caregiver is connected through the MDCH’s registration process.
*157 Defendants’ business facilitates patient-to-patient sales, presumably to benefit the transferee patient’s debilitating medical condition or symptoms. However, those transfers do not qualify for § 4 immunity because they encompass marijuana-related conduct that is not for the purpose of alleviating the transferor’s debilitating medical condition or its symptoms. Because the defendants’ “medical use” of marijuana does not comply with the immunity provisions of §§ 4(a), 4(b), and 4(d), defendants cannot claim that § 4 insulates them from a public nuisance claim.
Nevertheless, defendants posit that, even if they are not entitled to immunity under § 4(d), § 4(i) permits their business to operate in accordance with the MMMA. Section 4(i) insulates a person from “arrest, prosecution, or penalty in any manner. . . solely for being in the presence or vicinity of the medical use of marihuana in accordance with this act, or for assisting a registered qualifying patient with using or administering marihuana.”[61] However, this provision does not apply to defendants’ actions, nor does it apply to any patient-to-patient transfers of marijuana. First, defendants were not “solely ... in the presence or vicinity of the medical use of marihuana” because they were actively facilitating patient-to-patient sales for pecuniary gain. Second, defendants were not “assisting a registered qualifying patient with using or administering marihuana.” While they were assisting one registered qualifying patient with acquiring marijuana and another registered qualifying patient with transferring marijuana, they were not assisting anyone with using or administering marijuana.[62]
*158 Notably, § 4(i) does not contain the statutory term “medical use,” but instead contains two of the nine activities that encompass medical use: “using” and “administering” marijuana. “Use” is defined as “to employ for some purpose; put into service[.]”[63] “Administer” is defined in the medicinal context as “to give or apply: to administer medicine.”[64] In this context, the terms “using” and “administering” are limited to conduct involving the actual ingestion of marijuana. Thus, by its plain language, § 4(i) permits, for example, the spouse of a registered qualifying patient to assist the patient in ingesting marijuana, regardless of the spouse’s status. However, § 4(i) does not permit defendants’ conduct in this case. Defendants transferred and delivered marijuana to patients by facilitating patient-to-patient sales; in doing so, they assisted those patients in acquiring marijuana. The transfer, delivery, and acquisition of marijuana are three activities that are part of the “medical use” of marijuana that the drafters of the MMMA chose not to include as protected activities within § 4(i). As a result, defendants’ actions were not in accordance with the MMMA under that provision.
C. SECTION 8 AFFIRMATIVE DEFENSE
Finally, even though § 4 does not permit defendants to operate a business that facilitates patient-to-patient sales of marijuana, our decision in Kolanek makes clear that § 8 provides separate protections for medical marijuana patients and caregivers and that one need not satisfy the requirements of § 4 immunity to be entitled to the § 8 affirmative defense,[65] which allows “a patient and a patient’s primary caregiver, if any, [to] assert the *159 medical purpose for using marihuana as a defense to any prosecution involving marihuana____”[66] However, by its own terms, § 8(a) only applies “as a defense to any prosecution involving marihuana____”[67] The text and structure of § 8 establish that the drafters and voters intended that “prosecution” refer only to a criminal proceeding. Specifically, § 8(b) explains that a person “may assert the medical purpose for using marihuana in a motion to dismiss, and the charges shall be dismissed following an evidentiary hearing where the person shows the elements listed in subsection (a).”[68] As a result, § 8 does not provide defendants with a basis to assert that their actions are in accordance with the MMMA.
Although it did so for a different reason than the one we articulate, the Court of Appeals reached the correct conclusion that defendants are not entitled to operate a business that facilitates patient-to-patient sales of marijuana. Because the business model of defendants’ dispensary relies entirely on transactions that do not comply with the MMMA, defendants are operating their business in “[a] building .. . used for the unlawful.. . keeping for sale ... or furnishing of any controlled substance,” and plaintiff is entitled to an injunction enjoining the continuing operation of the business because it is a public nuisance.[69]
*160 IV CONCLUSION
Because we conclude that defendants’ business does not comply with the MMMA, we affirm the Court of Appeals’ decision on alternative grounds. While the sale of marijuana constitutes “medical use” as the term is defined in MCL 333.26423(c), § 4 of the MMMA, MCL 333.26424, does not permit a registered qualifying patient to transfer marijuana for another registered qualifying patient’s medical use. Plaintiff is thus entitled to injunctive relief to abate a violation of the Public Health Code.
Markman, Mary Beth Kelly, and Zahra, JJ., concurred with Young, C.J.
APPENDIX
As an aid to judges, practitioners, and the public, we provide the following summary of our holdings in this case:
(1) The term “medical use,” as defined in § 3(e) of the Michigan Medical Marihuana Act (MMMA), MCL 333.26423(e), encompasses the sale of marijuana “to treat or alleviate a registered qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition.”
(2) To be eligible for immunity under § 4 of the MMMA, MCL 333.26424, a registered qualifying patient must be engaging in marijuana-related conduct for the purpose of alleviating the patient’s own debilitating medical condition or symptoms associated with the debilitating medical condition.
(3) To be eligible for § 4 immunity, a registered primary caregiver must be engaging in marijuana-related conduct for the purpose of alleviating the debili *161 tating medical condition, or symptoms associated with the debilitating medical condition, of a registered qualifying patient to whom the caregiver is connected through the registration process of the Michigan Department of Community Health (MDCH).
(4) As a result, § 4 does not offer immunity to a registered qualifying patient who transfers marijuana to another registered qualifying patient, nor does it offer immunity to a registered primary caregiver who transfers marijuana to anyone other than a registered qualifying patient to whom the caregiver is connected through the MDCH’s registration process.
(5) Section 4(i), MCL 333.26424(i), permits any person to assist a registered qualifying patient with “using or administering” marijuana. However, the terms “using” and “administering” are limited to conduct involving the actual ingestion of marijuana.
(6) The affirmative defense of § 8 of the MMMA, MCL 333.26428, applies only to criminal prosecutions involving marijuana, subject to the limited exceptions contained in § 8(c) for disciplinary action by a business or occupational or professional licensing board or bureau or forfeiture of any interest in or right to property.

 MCL 333.26421 et seq.

 MCL 333.26427(a).

 MCL 333.26423(e).

 Black’s Law Dictionary (8th ed), p 1535 (emphasis added); see also Random House Webster’s College Dictionary (2d ed, 1997), p 1366 (defining “transfer” as “to convey or remove from one place, person, or position to another”).

 MCL 333.26424(d) (emphasis added).

 A “qualifying patient” is defined in the MMMA as “a person who has been diagnosed by a physician as having a debilitating medical condition.” MCL 333.26423(h). A “primary caregiver” is defined as “a person who is at least 21 years old and who has agreed to assist with a patient’s medical use of marihuana and who has never been convicted of a felony involving illegal drugs.” MCL 333.26423(g). The patient and caregiver registration processes are outlined in MCL 333.26426.

 Moreover, according to defendants, a registered primary caregiver can only become a member if the caregiver’s patient is also a member and authorizes the caregiver to become a member.

 In order to rent a locker, the member must expressly authorize CA to sell the marijuana stored in that locker to other CA members.

 The sale price of marijuana at CA ranges from $7 a gram to $20 a gram.

 Defendants supervised four employees, but it is not clear from the record whether the employees were either registered qualifying patients or registered primary caregivers.

 CA does not allow a member to purchase more than 2.5 ounces over a 14-day period.

 The police officer who initially made contact with defendants testified that, in addition to “displays of various marijuana with prices,” the display room also contained brownies “and other ingestible products.”

 The court also noted that the issue of marijuana dispensaries “[was] not before the court” because this case involved “patient-to-patient transfers.”

 Michigan v McQueen, 293 Mich App 644; 811 NW2d 513 (2011).

 Id. at 654.

 Id. at 655.

 Id. at 663.

 Id. at 668.

 MCL 333.26424(e).

 McQueen, 293 Mich App at 669.

 MCL 333.264246).

 McQueen, 293 Mich App at 673.

 Michigan v McQueen, 491 Mich 890 (2012).

 Pontiac Fire Fighters Union Local 376 v City of Pontiac, 482 Mich 1, 8; 753 NW2d 595 (2008).

 People v Kolanek, 491 Mich 382, 393; 817 NW2d 528 (2012).

 See Const 1963, art 2, § 9 (“The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative....”).

 Kolanek, 491 Mich at 405.

 Klooster v City of Charlevoix, 488 Mich 289, 296; 795 NW2d 578 (2011), citing Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999).

 Sun Valley Foods, 460 Mich at 236, quoting United States v Turkette, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).

 People v Cole, 491 Mich 325, 330; 817 NW2d 497 (2012), quoting Sura Valley Foods, 460 Mich at 236 (alteration in original).

 MCR. 2.613(C); People v Robinson, 475 Mich 1, 5; 715 NW2d 44 (2006).

 People v Armstrong, 490 Mich 281, 289; 806 NW2d 676 (2011).

 Emphasis added. MCL 600.3805 allows the prosecuting attorney to maintain an action for equitable relief to abate a nuisance under MCL 600.3801. During the pendency of this case, the Legislature amended MCL 600.3801, but the operative language relevant to this case was unchanged. 2012 PA 352.

 MCL 333.26427(a).

 Kolanek, 491 Mich at 394, quoting MCL 333.26427(a) (alteration in original).

 For instance, Colorado provides for and regulates “medical marijuana center[s]” that sell marijuana to registered medical marijuana patients. Colo Rev Stat 12-43.3-402. Similarly, Maine permits a registered medical marijuana patient to designate a not-for-profit dispensary that may provide marijuana for the patient and “[rjeceive reasonable monetary compensation for costs associated with assisting or for cultivating marijuana for a patient who designated the dispensary[.]” Me Rev Stat tit 22, § 2428(1-A). See also Ariz Rev Stat 36-2801(11) (defining “Monprofit medical marijuana dispen *149 sary” as “a not-for-profit entity that acquires, possesses, cultivates, manufactures, delivers, transfers, transports, supplies, sells or dispenses marijuana or related supplies and educational materials to cardholders”); RI Gen Laws 21-28.6-3(2) (defining “[ejompassion center” as “a not-for-profit corporation ... that acquires, possesses, cultivates, manufactures, delivers, transfers, transports, supplies or dispenses marijuana, and/or related supplies and educational materials, to registered qualifying patients and/or their registered primary caregivers who have designated it as one of their primary caregivers”).

 MCL 333.26423(e).

 McQueen, 293 Mich App at 668.

 MCL 8.3a.

 People v Morey, 461 Mich 325, 330; 603 NW2d 250 (1999).

 Black’s Law Dictionary (8th ed), p 1535 (emphasis added); see also Random House Webster’s College Dictionary (2d ed, 1997), p 1366 (defining “transfer” as “to convey or remove from one place, person, or position to another”).

 Black’s Law Dictionary (8th ed), p 1364 (emphasis added); see also Random House Webster’s College Dictionary (2d ed, 1997), p 1143 (defining “sale” as “transfer of property for money or credit”).

 MCL 333.26424(e).

 MCL 333.26423(e).

 Defendants claim that this provision excludes a caregiver’s reimbursement from the provisions of the General Sales Tax Act, MCL 205.51 et seq. Because it is well beyond the scope of this case, we need not address that issue.

 A registered qualifying patient or registered primary caregiver who violates § 4(k) “shall have his or her registry identification card revoked and is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both, in addition to any other penalties for the distribution of marihuana.” MCL 333.26424(k).

 MCL 333.26424(k).

 MCL 333.26423(e) (emphasis added).

 MCL 333.26424(k).

 MCL 333.1101 et seq.

 MCL 333.26427(a).

 These situations are limited to “any prosecution involving marihuana,” MCL 333.26428(a), a “disciplinary action hy a business or occupational or professional licensing board or bureau,” MCL 333.26428(c)(1), or “forfeiture of any interest in or right to property,” MCL 333.26428(c)(2). For further discussion of the § 8 affirmative defense, see part III(C) of this opinion.

 “ ‘Qualifying patient’ means a person who has been diagnosed by a physician as having a debilitating medical condition.” MCL 333.26423(h).

 MCL 333.26424(a). Section 4(a) also conditions immunity on the patient’s possession of “an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility.” Section 4(a) is consistent in structure with § 6(a)(6), which requires a registered qualifying patient to designate “whether the qualifying patient or primary caregiver will be allowed under state law to possess marihuana plants for the qualifying patient’s medical use.” MCL 333.26426(a)(6). This determination is “based solely on the qualifying patient’s preference.” MCL 333.26426(e)(6).

 MCL 333.26424(b). “ ‘Primary caregiver’ means a person who is at least 21 years old and who has agreed to assist with a patient’s medical use of marihuana and who has never been convicted of a felony involving illegal drugs.” MCL 333.26423(g). Section 4(b) also conditions immunity on the patient’s possession of an amount of marijuana that does not exceed 2.5 ounces of usable marijuana for each qualifying patient to whom the caregiver is connected through the MDCH’s registration process, and, for each qualifying patient who has specified that a primary caregiver will be allowed under state law to cultivate marijuana for the qualifying patient, 12 marijuana plants kept in an enclosed, locked facility.

 MCL 333.26424(d) (emphasis added).

 In concluding that our holding “is inconsistent with the purpose of the MMMA,” post at 164, the dissent ignores that the purpose of any statutory text is communicated through the words actually enacted. By giving effect to the text of § 4(d), the Court is giving effect to the purpose of the MMMA. Similarly, the dissent’s claim that qualifying patients “are, for all practical purposes, deprived of an additional route to obtain marijuana,” post at 164, is irrelevant when the language of § 4(d) requires the conclusion that a transferor may not avail himself of immunity when the transfer is not to alleviate the transferor’s debilitating medical condition.

 Post at 163.

 Our interpretation of § 4(d) does not turn on the fact that the patient-to-patient transfers occurred for a price. Rather, § 4(d) acts as a limitation on what sort of “medical use” is allowed under the MMMA. The same limitation that prohibits a patient from selling marijuana to another patient also prohibits him from undertaking any transfers to another patient.

 Of course, a registered qualifying patient who acquires marijuana— whether from another registered qualifying patient or even from someone who is not entitled to possess marijuana — to alleviate his own condition can still receive immunity from arrest, prosecution, or penalty because the § 4(d) presumption cannot be rebutted on that basis. In this sense, § 4 immunity is asymmetric: it allows a registered qualifying patient to obtain marijuana for his own medical use but does not allow him to transfer marijuana for another registered qualifying patient’s use.

 MCL 333.26424G).

 Defendants specifically denied that they allowed any ingestion of marijuana to occur at CA.

 Random House Webster’s College Dictionary (2d ed, 1997), p 1414.

 Id. at 17.

 Kolanek, 491 Mich at 403.

 MCL 333.26428(a).

 Id. (emphasis added).

 MCL 333.26428(b) (emphasis added). This limitation is further supported by the explicit exceptions that allow a person to assert the § 8 affirmative defense outside the criminal context. Section 8(c) allows a patient or caregiver to assert a patient’s medical purpose for using marijuana outside the context of criminal proceedings, but only as a defense to “disciplinary action by a business or occupational or professional licensing board or bureau” or the “forfeiture of any interest in or right to property.” MCL 333.26428(c). This case does not represent one of the two limited exceptions contained in § 8(c).

 Former MCL 600.3801.