# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN CHRISTOPHER PLACENCIA,

        Defendant-Appellant.

UNPUBLISHED
September 22, 2015

No. 321585
Kent Circuit Court
LC No. 12-008461-FH;
          13-009315-FH

Before: BOONSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Defendant was convicted in a bench trial of various marijuana-related offenses set forth below and sentenced to time in the county jail. He appeals as of right, raising an issue under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.* We affirm.

In August 2011, this Court issued its decision in *Michigan v McQueen*, 293 Mich App 644; 811 NW2d 513 (2011), aff'd on other grounds 493 Mich 135 (2013), effectively holding that the MMMA does not provide immunity from prosecution with respect to the operation of a medical-marijuana dispensary, because the "medical use" of marijuana permitted under the MMMA does not encompass a "sale" of marijuana. Here, defendant, a registered qualifying medical-marijuana patient and a registered "connected" primary caregiver to five registered qualifying patients under the MMMA, was charged with conduct occurring on May 30, 2012, well after this Court's decision in *McQueen* had been released.[1] As to the date of May 30, 2012, there is no dispute that defendant owned and operated a medical-marijuana dispensary, selling marijuana out of a storefront to any and all persons displaying MMMA registry identification cards and not solely to the connected qualifying patients for whom defendant was the primary caregiver. There is also no dispute that on May 30, 2012, a quantity of marijuana purportedly associated with defendant's dispensary business was discovered by police at defendant's personal residence. Additionally, the evidence established that earlier, in November 2011 (still post *McQueen*, 293 Mich App 644), the police had executed a search warrant relative to

---

[1] "When a qualifying patient elects a primary caregiver, a registry identification card is also issued to the primary caregiver. When a qualifying patient has properly designated a primary caregiver under the MMMA, the primary caregiver is said to be 'connected' to that particular qualifying patient." *People v Hartwick*, __ Mich __, __; __ NW2d __ (2015); slip op at 8 n 15.

-1-

defendant's marijuana dispensary, which was in full operation, and while defendant was warned that the dispensary violated the law, a criminal prosecution was not commenced at that time. Thereafter, but prior to May 30, 2012, the county prosecutor distributed letters to marijuana dispensaries, including defendant's business, informing them to cease operations in light of the illegality of dispensaries. However, defendant continued to operate his dispensary and was actively doing so on May 30, 2012.

Search warrants executed by the police on May 30, 2012, led to the discovery of the marijuana at defendant's home and of the ongoing marijuana-dispensary operation at the storefront, resulting in the initiation of two lower court files or cases. One case pertained to the operation of the dispensary and the marijuana found at that location, and the second case concerned the marijuana found at defendant's residence. Pretrial motions filed by defendant under the immunity and affirmative defense provisions of the MMMA, MCL 333.26424 (§ 4) and MCL 333.26428 (§ 8), respectively, were denied by the trial court. See *People v Hartwick*, __ Mich __; __ NW2d __ (2015) (thoroughly discussing the procedural and substantive aspects of §§ 4 and 8). Prior to defendant's bench trial, our Supreme Court, after having granted leave, issued its decision in *Michigan v McQueen*, 493 Mich 135; 828 NW2d 644 (2013), in February 2013. The Court concluded, contrary to this Court's ruling, that the "medical use" of marijuana allowed under the MMMA generally included a "sale" of marijuana, falling under the umbrella of the term "transfer" as employed in the definition of "medical use" in MCL 333.26423. *McQueen*, 493 Mich at 141. However, the Supreme Court nevertheless affirmed this Court's result, holding that § 4 immunity does not extend to transfers or sales between registered qualifying patients, nor does it "extend to a registered primary caregiver who transfers [sells] marijuana for any purpose other than to alleviate the condition or symptoms of a specific patient *with whom the caregiver is connected through the . . . registration process.*" *Id.* at 156. Accordingly, although on the basis of different reasoning, both this Court's opinion in *McQueen*, issued before defendant engaged in the charged conduct, and our Supreme Court's opinion in *McQueen*, issued after defendant engaged in the charged conduct, interpreted the MMMA in a manner that simply did not afford immunity to defendant relative to the operation of his marijuana dispensary.

After the Supreme Court's decision in *McQueen* was released, defendant filed a motion in the trial court to dismiss the charges. He argued that application of the *Supreme Court's decision* in *McQueen* to defendant's conduct would violate his due process rights, given that retroactive application of that judicial decision would operate or act as an ex post facto law, criminalizing conduct that, as claimed by defendant, had been innocent at the time it occurred. See *People v Doyle*, 451 Mich 93, 100; 545 NW2d 627 (1996); *People v Johnson*, 302 Mich App 450, 464-465; 838 NW2d 889 (2013).[2] The underlying premise of defendant's argument was

---

[2] In *Doyle*, 451 Mich at 99-100, the Michigan Supreme Court explained:

> It is well recognized that the Ex Post Facto Clause does not apply directly to the judiciary. However, ex post facto principles are applicable to the judiciary by analogy through the Due Process Clauses of the Fifth and Fourteenth Amendments. This Court has acknowledged the application of the ex post facto analogy to the judiciary . . . .

based on the language in § 4(e), which provides as follows: A registered primary caregiver may receive compensation for costs associated with assisting *a* registered qualifying patient in the medical use of marihuana. Any such compensation shall not constitute the sale of controlled substances. [Emphasis added.]

Defendant argued that, considering the use of the indefinite article "a" in § 4(e), he had reasonably believed that he could sell appropriate quantities of medical marijuana *to any person* possessing an MMMA registry identification card, not just to "the" connected qualifying patients for whom defendant was the primary caregiver. According to defendant, the Supreme Court's decision in *McQueen* undermined and rejected such a construction, but because *McQueen* was decided *after* defendant engaged in the conduct at issue, its application to defendant's case would violate ex post facto principles. The trial court denied defendant's motion, ruling that it was foreseeable that the Supreme Court in *McQueen* would limit medical-marijuana transfers or sales from primary caregivers to *only* their connected qualifying patients, not unconnected registered qualifying patients in general.[3]

---

> Therefore, retroactive application of a judicial decision will only violate due process when it acts as an ex post facto law. An ex post facto law has been defined . . . as one that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action . . . . As a result of the due process analogy, it has been stated that an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law . . . . The retroactive application of an unforeseeable interpretation of a criminal statute, if detrimental to a defendant, generally violates the Due Process Clause. [Citations, quotation marks, and emphases omitted.]

[3] With respect to § 4 immunity for primary caregivers, MCL 333.26424 provides, in part, as follows:

> (b) A primary caregiver who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner . . . for assisting a qualifying patient *to whom he or she is connected* through the department's registration process with the medical use of marihuana in accordance with this act. . . . This subsection applies only if the primary caregiver possesses an amount of marihuana that does not exceed:

> (1) 2.5 ounces of usable marihuana for each qualifying patient to whom he or she *is connected* through the department's registration process; and

> (2) for each registered qualifying patient who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility; and

> (3) any incidental amount of seeds, stalks, and unusable roots. [Emphasis added.]

Subsequently, the two cases, i.e., (1) the charges related to the dispensary and (2) the charges related to defendant's home, were tried together in a single bench trial. With respect to the charges arising out of the operation of the dispensary, defendant was convicted of unlawful manufacture of marijuana, MCL 333.7401(2)(d)(*iii*), conspiracy to commit unlawful manufacture of marijuana, MCL 750.157a; MCL 333.7401(2)(d)(*iii*), and knowingly keeping or maintaining an illegal drug store or shop, MCL 333.7405(d). With respect to the charges arising out of the marijuana discovered at defendant's residence, he was convicted of unlawful manufacture of marijuana and knowingly keeping or maintaining an illegal drug house.

On appeal, defendant merely renews the same ex post facto argument presented to the trial court. This Court reviews for an abuse of discretion a trial court's decision on a motion to dismiss, but underlying questions of law are reviewed de novo. *Johnson*, 302 Mich App at 456.

As argued by the prosecution below, a major flaw in defendant's argument is that it essentially ignores or incorrectly minimizes *this Court's* decision in *McQueen*, which predated May 30, 2012; the date upon which the charges against defendant arose. The *McQueen* panel construed § 4 of the MMMA and expressly held that the "medical use" of marijuana does not permit the sale of marijuana, "because the sale of marijuana is not equivalent to the delivery or transfer of marijuana." *McQueen*, 293 Mich App at 668. In *McQueen*, the defendants had argued "that they, as registered primary caregivers . . .[,] [could] actively participate in and carry out . . . [patient-to-patient] sales and receive compensation for their assistance through their operation of CA [ - the defendants' dispensary]." *Id.* at 664. The *McQueen* defendants maintained, in part, that § 4(e), the provision relied on here by defendant, "allow[ed] them to be compensated for their assistance." *Id.* This Court ultimately rejected all of the defendants' arguments, and in regard to § 4(e), the panel stated that it "actually supports the conclusion that the medical use of marijuana does not include the sale of marijuana." *Id.* at 669. The Court further discussed § 4(e), noting:

In addition, because the medical use of marijuana does not include the sale of marijuana, defendants are not entitled to receive compensation for the costs of assisting in the sale of marijuana between CA [dispensary] members. See MCL 333.26424(e) ("A registered primary caregiver may receive compensation for costs associated with assisting a registered qualifying patient in the medical use of marihuana."). *Also, in regard to § 4(e), the parties disagree whether a registered primary caregiver may receive compensation for the costs associated with assisting any registered qualifying patient in the medical use of marijuana or whether a registered primary caregiver may only receive compensation for assisting the qualifying patients with whom he or she is connected through the MDCH registry process. Because of our conclusion that the medical use of marijuana does not include the sale of marijuana, we need not, and therefore do not, resolve this dispute.* [*McQueen*, 293 Mich App at 670 n 18 (emphasis added).]

As indicated in this passage, this Court declined to answer whether a primary caregiver could be compensated for assisting an "unconnected" registered qualifying patient, given that, if

the assistance entailed the "sale" of marijuana, it would not be protected by MMMA immunity regardless of whether the registered qualifying patient was connected or unconnected.[4]  For our purposes, this Court's decision in *McQueen* effectively precluded dispensary sales of medical marijuana as between primary caregivers, such as defendant, and qualifying patients in general (unconnected patients).  Thus, the operation of defendant's marijuana dispensary on May 30, 2012, was definitively criminal, consistent with the charges brought by the prosecution and absent any immunity protection under the MMMA.  Defendant was also informed of this fact by the authorities, but chose to continue the operation.  Under *McQueen*, as issued by this Court, defendant was on notice of the illegality of his dispensary prior to the issuance of charges.  It is of no import that the "sales" approach taken by this Court was later rejected by the Supreme Court; defendant's conduct was illegal.  Accordingly, defendant's ex post facto argument tied to the Supreme Court's opinion in *McQueen* necessarily fails and is ultimately irrelevant.  We note that this Court's decision in *Johnson*, 302 Mich App at 463-466, reinforces our conclusion, where in *Johnson*, the panel accepted that this Court's opinion in *McQueen* barred the operation of marijuana dispensaries.[5]

Moreover, even if we set aside any consideration of this Court's decision in *McQueen*, our Supreme Court's decision in *McQueen* certainly did not constitute an unforeseeable judicial enlargement of the MMMA, such that its application here would violate ex post facto principles.  First, this Court in *Johnson*, 302 Mich App at 465, while ruling that this Court's decision in *McQueen* was retroactive and that its application would not violate ex post facto principles, also noted that the same was true in regard to our Supreme Court's subsequent decision in *McQueen*.  To the extent that the *Johnson* panel's statement on the retroactive application of our Supreme Court's decision in *McQueen* was dicta, we nonetheless agree with the conclusion.[6]

Again, the Supreme Court in *McQueen* held, in part, that § 4 immunity does not "extend to a registered primary caregiver who transfers marijuana for any purpose other than to alleviate the condition or symptoms of a specific patient *with whom the caregiver is connected through*

---

[4] As indicated earlier, the Supreme Court's holding in *McQueen* answered the question left unresolved by this Court, i.e., only sales between connected caregivers and patients are permissible, after the Supreme Court had rejected this Court's conclusion that the MMMA generally barred the selling of marijuana.

[5] The *Johnson* panel also indicated that "[t]his is not a case in which marijuana dispensaries were authorized by statute and then, by judicial interpretation, deemed illegal." *Johnson*, 302 Mich App at 465.

[6] Defendant attempts to distinguish *Johnson* on the basis that it did not confront the retroactivity or ex post facto issue in the context of a § 8 affirmative defense.  We reject this argument.  First, the decision by this Court in *McQueen* would necessarily have precluded the availability of the affirmative defense in regard to operating a dispensary, where it held that the medical use of marijuana did not entail the sale of marijuana. *McQueen*, 293 Mich App at 668.  Second, we see nothing in the language of § 8 that would permit the operation of a marijuana dispensary.  Third, and finally, defendant does not even attempt to analyze § 8 and explain how it would allow for the operation of a dispensary.

*the . . . registration process.*" *McQueen*, 493 Mich at 156. This holding is based on the plain and unambiguous language found in § 4(b), which expressly extends immunity to a primary caregiver "for assisting a qualifying patient to whom he or she is *connected . . .* with the medical use of marihuana." (Emphasis added.) There is no mention of immunity for assisting unconnected qualifying patients. And § 4(e) allows the primary caregiver to "receive compensation for costs associated with assisting a registered qualifying patient in the medical use of marihuana." Despite the use of the indefinite article "a" in § 4(e), it is plain that § 4(e) was intended to be read in conjunction with § 4(b), thereby making it clear that the "compensation" referred to in § 4(e) is tied to assisting solely a *connected* qualifying patient. If § 4(b) only allows a primary caregiver to assist a *connected* qualifying patient for purposes of immunity, how could a primary caregiver ever be legally entitled to compensation under § 4(e) for assisting an *unconnected* qualifying patient, as indisputably and repeatedly occurred in the operation of defendant's marijuana dispensary. The answer is that a primary caregiver cannot receive compensation under § 4(e) for costs associated with the impermissible act of assisting unconnected registered qualifying patients. And the Supreme Court's decision in *McQueen* affirming that proposition was hardly a surprise and was entirely foreseeable. For these reasons, we reject defendant's judicial ex post facto argument.

Affirmed.


/s/ Mark T. Boonstra
/s/ William B. Murphy
/s/ Jane E. Markey

-6-