# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

EARL CANTRELL CARRUTHERS,

        Defendant-Appellee.

UNPUBLISHED
December 15, 2015

No. 319991
Oakland Circuit Court
LC No. 2013-245268-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

RYAN TINSLEY CARRUTHERS,

        Defendant-Appellee.

No. 319992
Oakland Circuit Court
LC No. 2013-245250-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DERRICK SHOMARI HOLOMAN,

        Defendant-Appellee.

No. 319993
Oakland Circuit Court
LC No. 2013-245247-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

VERTRECE LEO SHEPARD WELLS,

No. 319994
Oakland Circuit Court
LC No. 2013-245261-FH

-1-

Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                                        No.  319995
                                                         Oakland Circuit Court
DEONTE PIERRE ARNOLD,                    LC No.  2013-245248-FH

       Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                                         No.  319996
                                                         Oakland Circuit Court
SHERALYN MEDIANTE GEER,                 LC No.  2013-245249-FH

       Defendant-Appellee.

_____

Before:  SAAD, P.J., and M. J. KELLY and SHAPIRO, JJ.

SHAPIRO, J. (*concurring*).

      I agree with the majority that the trial court erred by wholesale dismissal of all charges on the basis of entrapment. I further agree that on remand the trial court should conduct a § 8 hearing. I write separately to further outline the differences between § 4 immunity and a § 8 defense and to consider how the claim of entrapment is to be analyzed for each of the two sections.

## I.  FACTUAL BACKGROUND

      The parties do not dispute, at least for purposes of this appeal, that Earl Carruthers and Ryan Carruthers operated a business called Green, Greener, Grow (G3) and that the other three defendants were employed there. They also do not dispute that employees of this facility

provided medical marijuana patients with marijuana in exchange for payment.[1]  As a result of an undercover police investigation and a search pursuant to a warrant, charges were brought against four of the five defendants for conspiracy to deliver marijuana.  Deonte Arnold, Derrik Holoman, and Earl Carruthers were charged with possession with intent to deliver.  Earl Carruthers was also charged with money laundering.

It is undisputed that the undercover officer represented himself as a lawful marijuana patient.  On his first appearance at the location where defendants worked, he presented what appeared to be: (1) a legitimate marijuana certification signed by a licensed physician that fully complied with state law requirements and (2) the equivalent of a medical marijuana registry identification card.[2]  According to the officer's testimony, he provided the documents to defendants Sheralyn Greer and Arnold, who were working at the front desk.[3]  He also signed a document they presented to him which stated:

> 1.  By becoming a member you are certifying under penalty of law that your registry identification card, or its equivalent, and information provided on our application form is true and accurate, and you are not seeking membership for any illegal or fraudulent purposes.

> 2.  You must have obtained a recommendation from a physician, currently licensed to practice medicine in the state of Michigan, to use medicinal marijuana to treat a serious illness.  Or, you have been designated as a primary caregiver by a qualified patient to provide for that patient's health and well-being.

---

[1] The fact of payment is irrelevant to the application of the protections of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*.  *Michigan v McQueen*, 493 Mich 135, 141; 828 NW2d2d 644 (2013).

[2] MCL 333.26429(b) provides:

> If the department fails to issue a valid registry identification card in response to a valid application or renewal submitted pursuant to this act within 20 days of its submission, the registry identification card shall be deemed granted, and a copy of the registry identification application or renewal shall be deemed a valid registry identification card.

See also *People v Nicolson*, 297 Mich App 191, 194-195; 822 NW2d 284 (2012).  Thus, the officer's properly completed state application for a marijuana registry card with proof of submission more dated more than 20 days previously was properly considered to be the equivalent of a medical marijuana registry identification card.

[3] Some of defendants were personally shown the officer's documents while others were made aware of them by the records maintained at G3.

3. You will not distribute medicine received from Green & Greener Grow Collective, Inc. hereinafter referred to as G&GGC to any other person that is not a member of G&GGC.

4. You will not use medical marijuana from G&GGC for any non-medical purposes.

5. By registering with us you are stating that you are not a member of any other co-op or collective currently and will not join any other co-op or collective while under the care of G&GGC.

6. You authorize G&GGC to contact your physician and verify your state recommendation to use/acquire medicinal cannabis.

7. You authorize G&GGC and its members to grow, store, process, transport, dispense, administer and transfer medicinal marijuana for your medical needs.

8. You agree G&GGC and its members shall receive compensation as donations for cost associated with assisting you as a registered qualifying patient and member of G&GGC.

9. You agree not to operate any heavy machinery while under the influence of your medicinal cannabis. Do not drive under the influence of any substance that may impair your motor skills, including medical cannabis.

10. You have a Michigan Driver's License or state-issued I.D.

11. You have a Medical marijuana card, or a valid doctor's recommendation and one of them must be presented every time you obtain medical cannabis from our collective.

12. You are 18 years of age or older.

The officer testified that Greer gave him a G3 membership card and he was directed to a second room where he purchased approximately ¼ ounce of marijuana from Holoman. The officer returned on two other occasions, and, after showing his membership card, he purchased similar amounts of marijuana from Holoman and Wells. On two other occasions, the officer placed phone calls to G3 and spoke with unnamed persons. On those occasions, he arranged for ¼ ounce of marijuana to be sent to his purported address.

A warrant to search the G3 premises was obtained, and it was executed on January 5, 2012. During the search, a larger quantity of marijuana was seized and, thereafter, defendants were charged. At various times, defendants filed motions to dismiss under § 4 and § 8 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, and on grounds of entrapment. The trial court denied the request for relief under § 4, finding that the providers of the marijuana, i.e., defendants, had not been connected to the officer (or the person he represented himself to be) through the Michigan registration process. The trial court also took

-4-

some evidence on the § 8 defense, but it interrupted that hearing to consider the entrapment motion. After hearing the officer's testimony, the trial court dismissed all charges on grounds of entrapment. The prosecutor appealed to this Court.

## II. ANALYSIS

## A. CHARGES BASED ON DELIVERIES TO THE OFFICER

Defendants' claim of entrapment regarding the deliveries to the officer rests upon their assertion that, given the documents presented by the officer, they properly concluded that providing him with marijuana was lawful. I agree with my colleagues that defendants could not have reasonably believed that the documents alone made the deliveries lawful because the presentation of such documents is only one of several requirements necessary for protection by the MMMA. More precisely, it is not enough for defendants to simply assert entrapment as a general defense. Rather, they must show that the officer's presentation of the documents, in the context of other factors, provided them with a reasonable basis to conclude that their actions were lawful specifically on the grounds of § 4 immunity or a § 8 defense. Thus, rather than speaking in general terms about entrapment, the court should have considered the issue separately as to these two statutory provisions, i.e. did the officer's actions lead defendants to reasonably conclude that delivery to him would be lawful under § 4 or § 8.

It is well-settled that § 4 and § 8 define wholly separate defenses. This was first made explicit in *People v Kolanek*, 491 Mich 382, 387; 817 NW2d 528 (2012), where our Supreme Court held that, based on the plain language of the MMMA "a defendant asserting the § 8 affirmative defense is not required to establish the requirements of § 4, MCL 333.26424, which pertains to broader immunity granted by the act." Similarly in *People v Blysma*, 493 Mich 17, 22; 825 NW2d 543 (2012), our Supreme Court unanimously held that this Court had "erred when it concluded that defendant was not entitled to assert the § 8 affirmative defense solely because he did not satisfy the possession limits of § 4." *Id*. Further, the court held "a defendant need not establish the elements of § 4 immunity in order to establish the elements of the § 8 defense." *Id*. And again, in *Michigan v McQueen*, 493 Mich 135, 158; 828 NW2d 644 (2013), our Supreme Court reiterated that "*Kolanek* makes clear that § 8 provides separate protections for medical marijuana patients and caregivers and that one need not satisfy the requirements of § 4 immunity to be entitled to the § 8 affirmative defense[.]" Most recently, in *People v Hartwick*, 498 Mich 192, 200-203; ___ NW2d ___ (2015), our Supreme Court, again speaking unanimously, set out the elements that apply to a claim of § 4 immunity and contrasted those with the elements that apply to a § 8 defense.

### 1. SECTION 4 IMMUNITY

*Hartwick* explains that under § 4, "[w]hen a qualifying patient elects a primary caregiver, a registry identification card is also issued to the primary caregiver[,] . . . [who] is said to be 'connected' to that particular qualifying patient." *Hartwick*, 498 Mich at 205 n 15. For the

caregiver[4] to be shielded by § 4 immunity, he and the patient must be "connected" in this fashion. Given that requirement, none of the defendants would have been entitled to § 4 immunity as to any deliveries to the officer even if his representations had been true. Defendants do not assert that they were named by the officer as his registered caregivers, or that they had any reason to believe so. Accordingly, to the degree defendants claim that the officer's representations led them to conclude that they were immune from prosecution under § 4 of the MMMA, their claim of entrapment fails as a matter of law.

## 2. SECTION 8 DEFENSE

Section 8 of the MMMA does not provide immunity, but it does provide a complete defense.[5] Unlike § 4, the plain language of § 8 makes clear that its application is not limited to *registered* patients or to *registered* caregivers. Further, unlike § 4 immunity, a § 8 defense does not require that a caregiver and patient be "connected" or "linked." Section 8 can serve as a complete defense for any medical marijuana user and any medical marijuana caregiver[6] who satisfy its requirements. See *Kolanek*, 491 Mich at 398-399. Moreover, the language of § 8 places no limit on the number of patients a caregiver may serve so long as the standards are met as to each one. See MCL 333.26428.

Unfortunately, having erroneously concluded that the mere presentation of the documents automatically constituted entrapment, the trial court did not reach the more precise question whether the officer's actions and the documents he displayed provided defendants with a reasonable basis to believe that their deliveries to him would fall within the protections of a § 8 defense. On remand, the trial court should consider this issue in the context of the § 8 hearing.

*Hartwick* holds that under § 8, a provider of marijuana has not committed a crime and is a caregiver as defined by the statute where its requirements are satisfied. The first requirement, set out in MCL 333.26428(a)(1) has three parts:

(1) The existence of a bona fide physician-patient relationship,

---

[4] In order to qualify as a caregiver, an individual must be at least 21 years old, have no felony convictions for the prior ten years, and have no felony convictions involving either illegal drugs or assault. MCL 333.26423(h).

[5] Section 8 provides an affirmative defense to patients generally for "possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition[.]" MCL 333.26428(a)(2). The affirmative defense of § 8 is thus available regardless of the amount of marijuana possessed. A defendant may assert a § 8 defense by filing a motion to dismiss the criminal charges, in which case an evidentiary hearing must be held before trial. MCL 333.26428(b).

[6] "Caregiver" and "primary caregiver" are synonymous per MCL 333.26423(h).

(2)  in which the physician completes a full assessment of the patient's medical history and current medical condition, and

(3)  from which results the physician's professional opinion that the patient has a debilitating medical condition and will likely benefit from the medical use of marijuana to treat the debilitating medical condition.  [*Hartwick*, 498 Mich at 229.]

The documents presented by the officer may have provided a reasonable basis for defendants to conclude that this three-part requirement was met.  As *Hartwick* explains, possession of a valid registry card (of which the certification and a 20 day old application is the equivalent) is proof that a physician has offered his professional opinion that the patient has a debilitating medical condition for which he will receive benefit from marijuana.  *Id*. at 203 n 10.  Depending on the precise language of the physician's statement and the content of statements made by the officer to defendants, some or all of defendants may have had a reasonable belief that the certificate was based on a bona fide physician-patient relationship and a proper assessment.  See *id*. at 231-232 n 77.

Assuming that to be shown, defendants still must show that the officer's actions led them to reasonably believe that the provision of marijuana also met the requirements of MCL 333.26428(a)(2) and (a)(3).  Subsection (a)(2) requires that the amount of marijuana possessed by the patient and his caregiver not be more than "reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition."  MCL 333.26428(a)(2).  While "a primary caregiver may reasonably rely on the amount his or her patient states is needed to treat the patient's deliberating medical condition," *Hatwick*, 498 Mich at 234, defendants could not have reasonably believed that the transactions were lawful without having received some information as to the needed amount.

Finally, MCL 333.26428(a)(3) requires that the marijuana-related activities that the patient and his caregiver engaged in related to the provision and use of the drug for treatment of the patient's serious or debilitating medical conditions or symptoms thereof.  On its face, it would appear that if defendants reasonably believed that they met the other requirements of the statute, then this one would be met as well, but it remains to be seen if the prosecution has evidence to the contrary.

## B.  CHARGES BASED ON EVIDENCE SEIZED DURING THE SEARCH OF THE PREMISES

In addition to charges directly arising out of delivery of marijuana to the undercover officer, there are charges based on the January 12, 2013 discovery of a significant quantity of marijuana at the facility where the officer made his initial purchase.  Contrary to defendants' argument, an entrapment defense has no application to these charges.  Defendants argue that the items discovered in the ensuing search must be suppressed as fruit of the poisonous tree because the search warrant that was obtained based upon the deliveries was tainted by entrapment.  However, even if the deliveries to the officer were the result of entrapment, it does not undermine the use of the marijuana obtained in those transfers as the basis for further

investigation and a search warrant. *People v Johnson,* 466 Mich 491, 505; 647 NW2d 480 (2002). Therefore, the charges arising out of the marijuana and other evidence discovered may not be dismissed on grounds of entrapment.[7]


/s/ Douglas B. Shapiro

---

[7] It is not clear from the record which defendants are charged in connection with the larger quantity found during the search. I think it important to emphasize that each defendant is to be judged on his or own individual conduct and not collectively on the grounds that they were all employed by the same entity. In this regard, I believe my colleagues overemphasize the question whether marijuana dispensaries are lawful entities. The *McQueen* court ruled that a marijuana dispensary could be closed as a public nuisance. *McQueen,* 493 Mich at 158-159. However, as in any criminal case, the question is whether each individual defendant is guilty or not guilty of the crimes with which they are charged based on the actions they individually took. Being employed by a marijuana dispensary is not in and of itself a crime. Whether defendants have committed crimes turns on their individual actions and not on whether or not the entity that employed them conducted its business lawfully.