ZAHRA., J.
(concurring in part and dissenting in part). I agree with Part IV(A) of the majority opinion, which concludes that defendant is not entitled to immunity under § 4(i) of the Michigan Medical Marihuana Act (MMMA), MCL 333.2624(f). I write separately because I respectfully disagree with the conclusion reached in Part IV(B) of the majority opinion, which holds that *329 “ ‘marihuana paraphernalia,’ as that phrase is used in MCL 333.26424(g), includes [any] items that are. . . employed for the medical use of marihuana.” I therefore disagree with the proposition that because the sticky notes at issue here were “used in the cultivation or manufacture of marijuana,” they are “marihuana paraphernalia” entitling defendant to immunity under MCL 333.26424(g). In my view, when reading the MMMA as a whole and with an eye toward producing a harmonious and consistent enactment, marijuana paraphernalia must be an item or items intended to assist in the administration of marijuana to a qualifying patient under the MMMA. Because the sticky notes in question here were not used for the administration of marijuana to a qualifying patient, defendant’s act of assisting her husband with the cultivation and manufacture of marijuana through the use of sticky notes was not immune under MCL 333.26424(g). Accordingly, I would affirm the judgment of the Court of Appeals.
The statute at issue, MCL 333.26424(g), states in relevant part:
A person shall not be subject to arrest, prosecution, or penalty in any manner ... for providing a registered qualifying patient or a registered primary caregiver with marihuana paraphernalia for purposes of a qualifying patient’s medical use of marihuana.
Without citing any rule of statutory construction that gives deference to an adjacent phrase, the majority does just that by relying on the adjacent phrase “medical use of marihuana,” including the expansive statutory definition of medical use under former MCL 333.26423(e),[1] to define marijuana paraphernalia in a *330 manner in which the meaning of marijuana paraphernalia “cannot be so limited as to only include those items that are specifically designed for the medical use of marijuana.” Other than grammatical proximity, there is apparently no other justification offered for subverting the phrase “marihuana paraphernalia” in favor of an overly broad definition of “medical use” of marijuana. Having determined that the phrase “marihuana paraphernalia” is subservient to the phrase “medical use” the majority asserts that the phrase, “ ‘for purposes of a qualifying patient’s medical use of marihuana’ indicates that an item may or may not be ‘marihuana paraphernalia,’ depending on the use to which it is put.” I respectfully disagree.
A plain reading of MCL 333.26424(g) reveals that a person claiming immunity must have provided (1) marijuana paraphernalia (2) to a registered qualifying patient or a registered primary caregiver (3) for purposes of a qualifying patient’s medical use of marijuana. The third element does not explain the meaning of marijuana paraphernalia. Rather, the third element defines the specific intent of the person claiming immunity for providing marijuana paraphernalia. By defining marijuana paraphernalia in terms of medical use, however, the majority has improperly conflated the meaning of marijuana paraphernalia with the specific intent of the person providing marijuana paraphernalia to a registered qualifying patient or a registered primary caregiver. Specific intent involves “a subjective standard,”[2] which is “[a] legal standard that is peculiar to a particular person and based on the person’s individual *331 views and experiences.”[3] Thus, by holding that an item “may or may not be ‘marihuana paraphernalia,’ depending on the use to which it is put,” the majority has placed the meaning of “marihuana paraphernalia”—as with ... “[b]eauty ... in things”—“merely in the mind which contemplates them[.]”[4] In doing so, the majority improperly renders the phrase “marihuana paraphernalia” impotent and without any discernable independent meaning. Under the majority’s holding MCL 333.26424(g) provides that an individual may claim immunity “for providing a registered qualifying patient or a registered primary caregiver with [anything imaginable] for purposes of a qualifying patient’s medical use of marihuana.” Because this interpretation fails to provide any discernable independent meaning to the phrase “marihuana paraphernalia,” the majority’s interpretation has in part rendered MCL 333.26424(g) nugatory.[5]
The majority’s definition of marijuana paraphernalia is also not consistent with the definition of the medical use of marijuana in former MCL 333.26423(e).[6] MCL 333.26424(g) provides that a person may have immunity when providing marijuana paraphernalia to either a registered qualifying patient or a registered primary caregiver, but, importantly, only if the marijuana paraphernalia is intended for a registered qualifying patient’s medical use of marijuana. No immunity is provided if the marijuana paraphernalia is intended for a registered primary caregiver’s medical use of mari *332 juana. A person cannot provide marijuana paraphernalia for any intended medical use merely because the broad definition of medical use includes uses for both a registered qualifying patient and a registered primary caregiver. Former MCL 333.26423(e) defines “medical use” broadly as
the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition.[7]
While this definition includes broad protections for both registered qualifying patients and registered primary caregivers, MCL 333.26424(g) limits immunity for providing marijuana paraphernalia for only a registered qualifying patient’s medical use of marijuana. Plainly, “cultivation” and “manufacture” do not pertain to a registered qualifying patient’s medical use of marijuana.[7]
[8]
But, more importantly, the majority ignores the portion of former MCL 333.26423(e) that limits the medical use of paraphernalia to only that which is “relating to the administration of marihuana.” It is a long-accepted principle of statutory interpretation that an “entire act must be read and the interpretation to be *333 given to a particular word in one section arrived at only after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole.”[9] Rather than rendering the term “marihuana paraphernalia” subservient to the phrase “medical use,” the majority should have sought to render the two provisions harmonious and consistent.
The definition of “medical use” of marijuana explains that paraphernalia has a more limited meaning that does not, contrary to the majority’s reasoning, “dependí] on the use to which it is put.” Former MCL 333.26423(e) expressly limits the “medical use” of “paraphernalia” to only that which is “relating to the administration of marijuana.”[10] “Administering” marijuana, as the majority states, is “ ‘limited to conduct involving the actual ingestion of marijuana.’ ”[11] Therefore, while, as the majority notes, medical use is “a broader term than mere use or administration,” the medical use of paraphernalia is limited only to the administration, or “actual ingestion,” of marijuana. This limitation of paraphernalia is entirely consistent with the language in MCL 333.26424(g) that provides a person may have immunity for providing marijuana paraphernalia to either a registered qualifying patient or a registered primary caregiver, but, again, only if the marijuana paraphernalia is intended for a registered qualifying patient’s use or administration of marijuana.
There is no dispute that marijuana paraphernalia is not expressly defined under the MMMA. But from the *334 definition of “medical use” of marijuana, we glean that paraphernalia only relates to the administration of marijuana to a qualifying patient. While a person may still claim immunity if he or she were to provide marijuana paraphernalia to a registered patient or a primary caregiver, the person must have ultimately intended the paraphernalia be used for the administration of a registered qualifying patient’s medical use of marijuana.
The majority appropriately turns to a common dictionary to give the phrase “marijuana paraphernalia” meaning. The majority notes that “ [p]araphernalia” is defined as “ ‘equipment, apparatus, or furnishings used in or necessary for a particular activity.’ ”[12] But the majority then goes on to say “[n]othing in this definition states that a specific design must be intended.” I agree that the definition does not contain the actual phrase “specifically designed,” but the definition does refer to “a particular activity.” This language suggests that paraphernalia is indeed particular, i.e., specific, to a definite purpose. In my view, the common definition of paraphernalia certainly would not exclude equipment, apparatus, or furnishings specifically intended for a particular activity, such as administering marijuana. One would be hard-pressed to conclude that paraphernalia is equipment, apparatus, or furnishings that have not been specifically intended “to be used in or necessary for a particular activity.” Yet the majority contends that “[t]o only include items [as marijuana paraphernalia] that were specifically designed for the medical use of marijuana would be to turn the statutorily defined phrase ‘medical use’ into meaningless surplus-age.” I disagree. The phrase “medical use” is statutorily defined in former MCL 333.26423(e) (and as retained in *335 current MCL 333.26423(f)) and its meaning is law. That is, the definition of medical use is independent from and neither subverts nor dilutes the meaning ascribed to any nonstatutorily defined phrase, including marijuana paraphernalia.
In this case, when applying the relevant provisions of former MCL 333.26423(e) and MCL 333.26424(g) along with the common definition of paraphernalia, it is clear that the phrase “marihuana paraphernalia” includes equipment, apparatus, or furnishings specifically intended for the administration of marijuana to a registered qualifying patient. The phrase “marihuana paraphernalia” under former MCL 333.26423(e) simply does not include paraphernalia related to the role of a registered primary caregiver.
Further, the essence of the rule of law is to know in advance the rules of society.[13] Accordingly, the meaning given to the phrase “marihuana paraphernalia” must be ascertainable before a person provides marijuana paraphernalia, not afterwards. The majority opinion, however, attempts to define marijuana paraphernalia as that which is “actually employed for the medical use of marijuana.” This retrospective definition of “marihuana paraphernalia” based solely on how equipment, apparatus, or furnishings has been used offers little guidance to a person assessing whether his or her future conduct complies with the rule of law.
I would hold that the phrase “marihuana paraphernalia” includes equipment, apparatus, or furnishings and refers to items specifically intended for the administration of marijuana to a qualifying patient. Because there is no dispute that the sticky notes at issue here are not equipment, apparatus, or furnishings specifi *336 cally intended for the administration of marijuana to a qualifying patient, they are not marijuana paraphernalia under MCL 333.26424(g), and therefore defendant is not entitled to immunity. Accordingly, I would affirm the judgment of the Court of Appeals.[14]
YOUNG, C.J., concurred with ZAHRA, J.

 Former MCL 333.26423 was amended by 2012 PA 512, but the definition of “medical use” provided under former MCL 333.26423(e) was retained with identical content. See MCL 333.26423(f). Because former *330 MCL 333.26423(e) was in place at the time this action arose, this opinion will refer to that statute when addressing the definition of “medical use.”

 Frankenmuth Mut Ins Co v Masters, 460 Mich 105, 109; 595 NW2d 832 (1999).

 See Black’s Law Dictionary (9th ed.).

 1 Hume, Essays and Treatises on Several Subjects (1760), p 368.

 See Apsey v Mem Hosp, 477 Mich 120, 131; 730 NW2d 695 (2007), citing Black’s Law Dictionary (7th ed) (defining “nugatory” as “of no force or effect; useless; invalid”).

 See note 3 of this opinion.

 Emphasis added.

 We nonetheless observe that a patient may manufacture marijuana for personal medical use as long as the patient did not elect to have a primary caregiver manufacture the marijuana on the patient’s behalf. In the absence of this election, we often refer to the patient as being his “own caregiver,” hut technically the patient is not his “own caregiver.” The patient simply is a patient who has not made the caregiver election. Thus, a patient who did not make the caregiver election may cultivate and manufacture marijuana for personal medical use as permitted in the MMMA. See MCL 333.26426(a)(7).

 Grand, Rapids v Crocker, 219 Mich 178, 182-183; 189 NW 221 (1922). See also People v Cunningham, 496 Mich 145, 153-154; 852 NW2d 118 (2014).

 Emphasis added.

 Quoting Michigan v McQueen, 493 Mich 135, 158; 828 NW2d 644 (2013).

 Quoting Random House Webster’s College Dictionary (2005).

 Robinson v Detroit, 462 Mich 439, 467; 613 NW2d 307 (2000).

 The Court of Appeals concluded that the MMMA should be read in pari materia with the Public Health Code. “Statutes that address the same subject or share a common purpose are in pari materia and must be read together as a whole.” People v Harper, 479 Mich 599, 621; 739 NW2d 523 (2007). There is no doubt that the MMMA and the Public Health Code relate to the same general subject and have the same general purpose of regulating controlled substances, including marijuana. Because I rely on the actual language of the MMMA, though, I do not rely on the in pari materia canon to affirm the holding of the Court of Appeals in this case. The majority, however, erroneously finds error in the Court of Appeals’ application of in pari materia, concluding that the MMMA and the Public Health Code are “distinct and unconnected.” This is simply not true. Without the Public Health Code’s regulation of marijuana, there would be no need for the MMMA’s exception. Also of significance is the fact that in previous opinions interpreting the MMMA, this Court has repeatedly refered to the Public Health Code without concluding that it is “distinct and unconnected” from the MMMA. See People v Kolanek, 491 Mich 382, 395 n 24; 817 NW2d 528 (2012) (“Marijuana remains a schedule 1 substance in Michigan’s Public Health Code, MCL 333.7212(l)(c).”); McQueen, 493 Mich at 148 (“Marijuana is a controlled substance as defined in MCL 333.7104 [of the Public Health Code].”); People v Bylsma, 493 Mich 17, 27; 825 NW2d 543 (2012) (“[T]he MMMA introduced into Michigan law an exception to the Public Health Code’s prohibition on the use of controlled substances by permitting the medical use of marijuana when carried out in accordance with the MMMA’s provisions.”).