# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DOUGLAS DAVID BLESCH,

        Defendant-Appellee.

UNPUBLISHED
September 24, 2015

No. 314646
Barry Circuit Court
LC No. 12-000123-FH

---

Before: METER, P.J., and O'CONNELL and SHAPIRO, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the circuit court order allowing defendant to present to the jury an affirmative defense under § 8 of the Michigan Medical Marihuana Act (MMMA),[2] MCL 333.26421 *et seq*. We vacate and remand for proceedings consistent with this opinion and *People v Hartwick*, ___ Mich ___; ___ NW2d ___ (July 27, 2015; Docket Nos. 148444 & 148971).

## I. FACTS

On February 29, 2012, the police searched defendant's residence and seized approximately five pounds of marijuana. Defendant was charged with multiple offenses, including manufacturing 20 to 200 marijuana plants, possession of marijuana with intent to deliver, and maintaining a drug house. Defendant moved to dismiss his marijuana-related charges under § 8 of the MMMA and a § 8 evidentiary hearing was held in September 2012.

Defendant was the only testifying witness for the defense at the evidentiary hearing. He testified that at the time of the February 29, 2012 raid, he was a medical marijuana user and was his own caregiver and was also the primary caregiver for four additional patients: Jennifer

---

[1] *People v Blesch*, unpublished order of the Court of Appeals, entered September 16, 2013 (Docket No. 314646).

[2] The MMMA uses the spelling "marihuana." Throughout this opinion, we use the more common spelling "marijuana" unless quoting from the MMMA or cases that use the variant spelling. See, e.g., *People v Carruthers*, 301 Mich App 590, 594 n 1; 837 NW2d 16 (2013).

McQuater, Gary Hambright, Eric Campbell, and Jason Colosky. According to defendant, he suffered from gastroesophageal reflux disease (GERD) and his physician, Dr. Roth, referred him to a Detroit physician in order to pursue medical marijuana as a possible treatment for his GERD. Defendant testified that he could not remember the name of the Detroit physician. According to defendant, the Detroit physician examined him, reviewed his medical history, and certified him as a candidate for the medical use of marijuana. Defendant submitted various state-issued medical marijuana registry identification cards for himself and his patients. The identification cards indicated that defendant was authorized to use medical marijuana and was the authorized caregiver for himself and his four patients. Additionally, defendant submitted physician certifications for each of his four patients. Dr. David A. Crocker signed all of the physician certifications, which indicated that Dr. Crocker diagnosed the respective patients with a debilitating medical condition for which "[t]he medical use of marihuana is likely to be palliative or provide therapeutic benefits." Defendant testified that he possessed the foregoing identification cards and physician certifications at the time of the raid.

The circuit court found that defendant presented prima facie evidence as to each of the three requisite elements of his § 8 affirmative defense, but that there was a material question of fact for the jury regarding the second element, § 8(a)(2). Accordingly, on January 18, 2013, the circuit court entered an order denying defendant's motion to dismiss his charges, but permitting him to present a § 8 affirmative defense to the jury. The circuit court also ordered that "the reference to 'marihuana' in MCL 333.26428 shall be interpreted to mean 'useable [sic] marihuana' as that term is defined in MCL 333.26423[k], and not 'marihuana' as that term is defined in MCL 333.26423[e] and MCL 333.7106."

After granting the prosecution's application for leave to appeal these rulings and hearing oral argument, we held this case in abeyance pending the Supreme Court's decision in *Hartwick*.[3]

## II. SECTION 8 DEFENSE

The prosecution argues that the trial court erred in ruling that defendant presented the prima facie evidence necessary to assert a § 8 affirmative defense at trial. In *Hartwick*, slip op at 6, the Supreme Court held that in order for a defendant to be entitled to present a § 8 defense at trial, he "must present prima facie evidence of each element of § 8(a)[.]" If a defendant meets this burden, he must then establish each of those elements by a preponderance of the evidence at trial. *Id*. In this case, by allowing defendant to present his § 8 defense at trial, the trial court ruled that he presented prima facie evidence of each element of MCL 333.26248(a), which provides:

> [A] patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

---

[3] *People v Blesch*, unpublished order of the Court of Appeals, entered June 24, 2014 (Docket No. 314646).

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

We review "for an abuse of discretion a circuit court's ruling on a motion to dismiss" under the MMMA. *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012). A circuit court abuses its discretion "when its decision falls outside the range of principled outcomes." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012) (quotation omitted). We review "de novo questions regarding the interpretation of the MMMA[.]" *State v McQueen*, 493 Mich 135, 146-147; 828 NW2d 644 (2013).

A. SECTION 8(a)(1): THE PHYSICIAN-PATIENT RELATIONSHIP[4]

In *Hartwick*, slip op at 32-33, the Supreme Court held that § 8(a)(1) "may be reduced to three elements:"

(1) The existence of a bona fide physician-patient relationship,

(2) in which the physician completes a full assessment of the patient's medical history and current medical condition, and

---

[4] We note that 2012 PA 512 amended § 3 of the MMMA, MCL 333.26423, thereby altering the proofs sufficient to constitute prima facie evidence of the three elements of § 8(a)(1). Under the statute as amended, a patient's possession of a valid registration card now provides the patient and his caregiver with prima facie evidence of the second two elements. *Hartwick*, slip op at 10-11 n 10, 34 n 74. In addition, "bone fide physician-patient relationship" is now defined in the MMMA. *Id.*, slip op at 34-35 n 75; MCL 333.26423(a). However, this case arose before the effective date of that statute, as did the cases discussed in *Hartwick*.

(3) from which results the physician's professional opinion that the patient has a debilitating medical condition and will likely benefit from the medical use of marijuana to treat the debilitating medical condition.

With regard to § 8(a)(1), the trial court stated:

. . . [A]s it pertains to the defendant, [defendant] testified that he had a longstanding patient-physician relationship with Dr. Roth, that all the—he signed a release and all the medical information was forwarded to the referral that Dr. Roth had made for him to a second doctor, that he had a—what I would term a regular visit with that doctor. They took medical information. They conducted a physical. They spoke with him and in fact certified him to have a medical condition per—permitting the use of medical marihuana.

I don't know how this would be different that a referral for a second opinion or a referral to a specialist for a specific thing, maybe a chronic knee pain that you're gonna get an injection of cortisone for. It doesn't require that you continue to go. I don't see anything requiring that you continue to go back and forth with—with that physician that's been referred to you. In fact, there is generally an exchange of information between the physicians, which I would imagine—and if I—I'm remembering this wrong, you can correct me, but I think that the information the referring doctor took down and—and recorded was in fact sent back to Dr. Roth.

* * *

So as it pertains to [defendant], I—I do find that he was validly in possession of—or had that valid physician-patient relationship.

Turning to the issue of the other patients, I agree that it would be, quite frankly, inappropriate to call in the physicians and the patients to give specific details as to their medical conditions. I think it would violate the physician-patient privilege, and I don't think that a defendant can be expected to overcome that privilege with—I—I doubt a statute or law would ever be passed that would allow the defendant to overcome that privilege in pursuit of a defense that he may have to something like this. That is a highly regarded privilege, the physician-patient, and I don't believe that the act intended that a defendant would have to bring in a physician and the patient to establish that. And the reason I say this is because it says simply "A physician has stated that, in [his] professional opinion [comma], after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship [comma] . . . ."

That is all one clause together, so that presumes that the physician, by certifying what's been presented here, which [defendant] relied on in good faith, has stated in his or her opinion that he's completed a full assessment of the patient's medical history and current medical condition made in the course of that

-4-

bona fide physician-patient relationship. That is in fact what the certification says, that [defendant] had in his possession—in this Court's opinion had in his possession and relied upon in becoming a caregiver for those patients.

So with respect to element (1), I do find the defendant has met his prima facie burden with respect to that element.

Regarding the first element of § 8(a)(1), at the time of the alleged crimes, the MMMA did not define "bona fide physician-patient relationship." Thus, to satisfy this element, "there must be proof of an actual and ongoing physician-patient relationship at the time the written certification was issued." *Id.*, slip op at 35. With regard to defendant himself, the trial court did not err in implicitly finding that he presented prima facie evidence of a bona fide physician-patient relationship with the certifying doctor. Defendant's family doctor, Dr. Roth, referred him to the certifying physician. Defendant testified that this physician met with him in person, conducted a physical examination, and reviewed defendant's medical records[5] prior to certifying him for marijuana. Defendant stated that he met with this doctor an additional two times. This relationship bears all the indications of a bona fide physician-patient relationship and the prosecution presented no evidence to the contrary. Thus, with regard to defendant himself, he presented prima facie evidence of a sufficient relationship.

With regard to defendant's patients, however, insufficient evidence exists at this time to determine whether, under *Hartwick* and the MMMA as it existed at the time, they possessed bona fide physician-patient relationships with Dr. Crocker, who signed each of their physician certifications. Defendant did not testify in any detail regarding any of the possible meetings with Dr. Crocker and there is no evidence regarding whether the patients had a bona fide physician-patient relationship with him. Accordingly, remand is necessary to allow defendant to present evidence regarding the relationships between Dr. Crocker and these four patients.[6]

"The second element [of § 8(a)(1)] must be established through medical records or other evidence submitted to show that the physician actually completed a full assessment of the patient's medical history and current medical condition before concluding that the patient is likely to benefit from the medical use of marijuana . . . ." *Id.*, slip op at 34. We conclude that the trial court did not err in concluding that defendant had presented prima facie evidence of this element with regard to himself. Defendant presented medical records indicating that he had been referred to the certifying physician by his family physician, Dr. Roth. Per defendant, the certifying doctor conducted a full examination of him, reviewed his medical history, and

---

[5] Defendant testified that he had executed a release form allowing Dr. Roth to release his medical records to the certifying physician.

[6] Defendant did testify that he had gone to "all" of McQuater's doctor's appointments because he was her fiancée. He also stated that he was present during the appointment that resulted in McQuater receiving her physician certification. However, there was little detail in this testimony and remand is necessary to determine the nature of the relationship between McQuater and Dr. Crocker.

determined that he would benefit from the medical use of marijuana. Thus, with regard to defendant himself, sufficient prima facie evidence of the second element was presented.

With regard to his other patients, defendant did present physician certifications for their use of medical marijuana. However, the Supreme Court held that such certifications, at the time of the instant charged crimes, are not sufficient in themselves to satisfy the second element. *Id*. For the same reasons discussed with regard to a bona fide physician-patient relationship, remand is necessary to take evidence and consider this question with regard to defendant's patients.

The Supreme Court held that a registry identification card satisfies the third element of § 8(a)(1). *Id*. Defendant presented cards he claimed to be valid registry identification cards for himself and the four other patients at issue, thus satisfying the prima facie requirement for the third element.[7]

## B. SECTION 8(a)(2): THE QUANTITY OF MARIJUANA

The prosecution argues that the trial court erred in ruling that defendant presented sufficient prima facie evidence that the amount of marijuana he possessed was an amount "reasonably necessary" under § 8(a)(2).[8]

Defendant asserted a § 8 defense with regard to himself as a medical marijuana patient (and caregiver to himself) and as a caregiver to four other patients. With regard to both classifications, *Hartwick* held:

> A patient seeking to assert a § 8 affirmative defense may have to testify about whether a specific amount of marijuana alleviated the debilitating medical condition and if not, what adjustments were made to the consumption rate and the amount of marijuana consumed to determine an appropriate quantity. Once the patient establishes the amount of usable marijuana needed to treat the patient's debilitating medical condition, determining whether the patient possessed a quantity of marihuana that was not more than was reasonably necessary to ensure its uninterrupted availability also depends on how the patient obtains marijuana and the reliability of its source. This would necessitate some examination of the patient/caregiver relationship.
>
> The same analysis applies to primary caregivers seeking to present a defense under § 8. Primary caregivers must establish the amount of usable

---

[7] The trial court's concern for the physician-patient privilege with regard to the prosecution of a primary caregiver appears well-taken. Nonetheless, our Supreme Court held that a caregiver "plainly assumes the risk . . . that the patient may not cooperate in [the defense of] a subsequent prosecution of the primary caregiver . . . ." *Hartwick*, slip op at 36.

[8] As noted, the trial court did go on to find that a question of fact existed for the jury as to whether the amount of marijuana possessed by defendant was "reasonably necessary" under § 8(a)(2).

marijuana needed to treat their patients' debilitating medical conditions and then how many marijuana plants the primary caregiver needs to grow in order to ensure uninterrupted availability for the caregiver's patients. This likely would include testimony regarding how much usable marijuana each patient required and how many marijuana plants and how much usable marijuana the primary caregiver needed in order to ensure each patient the uninterrupted availability of marijuana. [*Id.*, slip op at 38-39 (quotation marks, formatting, and footnotes omitted).]

With regard to § 8(a)(2), the trial court stated:

Apparently it's left to the courts to determine what reasonably—or a jury to determine what "reasonably necessary" is "to ensure the uninterrupted availability." And [the prosecutor] makes a good point that it just says marihuana but not usable marihuana, although I don't find that to be a valid argument. I think that the intention was that it be usable marihuana. I don't know why somebody—there would be no purpose in somebody using stems, stalks, and seeds where there would be no medical benefit from that, which the act seems to contemplate that when it defines what usable marihuana is.

[Defendant] was the only one that was able to give testimony regarding this particular issue. I don't know that he ultimately said that, but the testimony was that the marihuana that was on hand was for the medical treatment of the patients, that the marihuana is started at different stages to allow for an uninterrupted availability. He testified regarding the weight of it being heavier when it's first cut, the different varieties have different weights, that based upon his testimony, there—he would need four to five ounces of finished marijuana for himself and his patients, at a minimum, a week, and that those, again, were in varying stages. We don't know what stages they were in. I only have testimony from [defendant] with respect to this. So with respect to a prima facie case, I do find that he's met that.

The trial court's two conclusions with regard to § 8(a)(2), i.e., (a) that defendant had presented prima facie evidence that the amount of marijuana he possessed was reasonable and (b) that the ultimate determination of reasonableness was a question for the jury, were not erroneous.

As the court noted, defendant testified explicitly that the marijuana (in its various stages of growth and processing) was an amount reasonably necessary to ensure uninterrupted availability of sufficient quantities to himself and his patients. Thus, defendant presented prima facie evidence sufficient to satisfy element § 8(a)(2) with regard to both himself and his patients.

Pursuant to *Hartwick*, we agree with the prosecution that the trial court erred in ruling that the amount of marijuana "reasonably necessary" should be limited to the amount of "usable marihuana" as defined in MCL 333.26423(k). However, that error does not entitle the prosecution to relief. In *Hartwick*, slip op at 37, the Supreme Court declined to import any of the definitions or quantity requirements of § 4 into § 8. The Court rejected the argument that "a

valid registry identification card, coupled with compliance with the volume limitations in § 4, establishes a presumption that the amount of marijuana possessed is reasonable" for purposes of § 8. § 4, not § 8, contains reference to and quantity restrictions regarding "usable marihuana." MCL 333.26424. By contrast, § 8 only refers to "marihuana," which the MMMA defines by reference to MCL 333.7106(4) in pertinent part as "all parts of the plant . . . growing or not; the seeds of that plant; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin." See MCL MCL 333.26423(e). Thus, the only inquiry is whether the amount of marijuana possessed by defendant was an amount reasonably necessary to ensure uninterrupted availability to defendant and his patients. Defendant's testimony that, to ensure uninterrupted availability, one needs to maintain marijuana (and plants) in various stages of growth and processing accords with common sense.

In sum, under *Hartwick*, the trial court did not err in ruling that defendant had presented sufficient prima facie evidence under § 8(a)(2) nor in ruling that the ultimate determination of reasonableness was one for the jury.

C. SECTION 8(a)(3): THE USE OF MARIJUANA FOR A MEDICAL PURPOSE

The Supreme Court has held that, "§ 8(a)(3) requires a patient and primary caregiver to show that any marijuana use complied with a . . . 'medical use' requirement found in § 4 and defined in § 3[,]" *id*., slip op at 39, i.e., MCL 333.26423(f), which provides:

> "Medical use" means the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation or marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition.

Specifically,

> patients must present prima facie evidence regarding their use of marijuana for a medical purpose regardless whether they possess a registry identification card. Primary caregivers would also have to present prima facie evidence of their own use of marijuana for a medical purpose and any patients' use of marijuana for a medical purpose. [*Id*., slip op at 40-41.]

With regard to § 8(a)(3), the trial court stated:

> . . . I think there is a presumption unless it's rebutted that it was cultivated or used or—"to treat or alleviate the patient's serious or debilitating medical condition," which has been determined by the physician under section (1), "to treat or alleviate the patient's serious or debilitating medical condition[s] or symptoms of [that]." That's also—was testified to here today that any marihuana he had on hand was for the medical treatment of the patient, so he does meet that.

*Hartwick*'s discussion of this element was minimal; essentially, the Supreme Court only stated that a patient (or caregiver) must present prima facie evidence that the use of any medical

marijuana was for a "medical use" under MCL 333.26423(f), regardless of whether the patient (or the caregiver's patients) possesses a valid registry identification card. Defendant testified in detail regarding his consumption of medical marijuana to treat his GERD diagnosis. This evidence was unrebutted and constituted sufficient prima facie evidence with regard to defendant himself. However, there was little to no testimony regarding the specific uses of medical marijuana by defendant's patients, other than in amount and the certified affliction. Accordingly, remand is required as to this element in regard to defendant's patients.

*Hartwick* provides little guidance as to what evidence defendant must present in this regard. However, we note that nothing in *Hartwick* requires defendant to present the testimony of his patients' certifying doctors. See *id*., slip op at 36 n 77 ("A defendant who submits proper evidence would likely not need his or her physician to testify to establish prima facie evidence of any element of § 8(a)."). Nor does *Hartwick* necessarily require a defendant to submit testimony of the patients themselves. We do not foreclose the possibility that defendant's own testimony regarding any purported statements of his patients that they engaged only in "medical use" of marijuana could constitute sufficient prima facie evidence to the degree it is admissible. See, e.g., MRE 803(4); 804(a)(2).

### III. CONCLUSION

The trial court's ruling was issued prior to *Hartwick*, an opinion which controls the issues in this case. Accordingly, we vacate the trial court's order and remand for an evidentiary hearing, after which the trial court shall reconsider, as necessary and consistent with this opinion and *Hartwick*, whether defendant presented sufficient prima facie evidence to assert a § 8 defense at trial. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Douglas B. Shapiro