*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ATTITUDE WELLNESS LLC,

        Plaintiff-Appellant,

v

CITY OF ROYAL OAK,

        Defendant-Appellee,

and

PGSH HOLDINGS LLC,

        Intervening Defendant-Appellee.

UNPUBLISHED
April 23, 2026
10:55 AM

No. 371309
Oakland Circuit Court
LC No. 2022-192288-CZ

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's, the city of Royal Oak's ("the City"), motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (10) (no genuine issue of material fact). We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the interpretation and application of the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 *et seq*. (MRTMA).[1] Under the MRTMA, municipalities that permit marijuana establishments to operate within their boundaries can adopt ordinances that impose restrictions on these establishments, "so long as those ordinances 'are not unreasonably impracticable' and do not conflict with the MRTMA or rules promulgated under the

---

[1] Although the MRTMA uses the spelling "marihuana," we will use the more familiar "marijuana" spelling when not directly quoting the MRTMA.

act." *Yellow Tail Ventures, Inc v Berkley*, 344 Mich App 689, 695; 1 NW3d 860 (2022), quoting MCL 333.27956(2). "[I]f a municipality elects to limit the number of marijuana establishments, then that municipality must select its licensees 'among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality.' " *Yellow Tail Ventures*, 344 Mich App at 695, quoting MCL 333.27959(4).

This appeal arises out of the same facts at issue in *Exclusive Cap Partners LLC v Royal Oak*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 366247), lv pending 26 NW3d 427 (2025).[2] As this Court explained, the City adopted a recreational marijuana ordinance that "authorize[d] all types of marijuana licenses allowed by the MRTMA, but limit[ed] the number of licenses available." *Id*. at ___; slip op at 3, citing MCL 333.27959(2) and Royal Oak Ordinances, § 435-2(B). "With respect to retail licenses, . . . the marijuana ordinance limits the number of municipal licenses to two." *Id*., citing Royal Oak Ordinances, § 435-2(B)(5).

> The marijuana ordinance grants the city manager "the power to fully and effectively implement and administer the municipal license application process." Royal Oak Ordinances, § 435-2(E). The ordinance directs that if more applications are received during the application window than licenses allowed, then "*the City shall decide among applications* by a competitive process intended to select the applicant(s) who are best suited to operate in compliance with the [MRTMA] within the City." Royal Oak Ordinances, § 435-4(C)(2) (emphasis added). Section 435-4(C)(4) of the marijuana ordinance sets forth a ranking process, directing that the applicants and their applications "will be ranked in the order of which is best suited to operate in compliance with the [MRTMA] within the City *as determined by the City Manager or his or her designee*." (Emphasis added.) Section 435-4(C)(4) further states that this ranking will be used to fill available license slots until all slots are filled, and mandates that 10 "competitive criteria" shall be used to meet this end: (1) the entire application and applicant's likelihood of success, (2) the applicant's tax history, (3) whether the applicant has previously operated a business within the City, (4) whether the applicant has a history of criminal convictions, (5) whether the applicant has ever been denied any kind of commercial license, (6) whether the applicant has ever applied for bankruptcy, (7) whether the applicant has conducted any outreach on behalf of the proposed business, (8) whether the applicant has encouraged a successful workforce, (9) whether the applicant has taken steps to introduce equity into the proposed operation, (10) whether the applicant has proposed a plan incorporating sustainable infrastructure. See Royal Oak Ordinances, § 435-4(C)(4)(a) to (j). [*Exclusive Cap*, ___ Mich App at ___; slip op at 3-4.]

The marijuana ordinance also imposes various operational requirements on license holders, including, relevant here, a provision consistent with the MRTMA that marijuana establishments

---

[2] *Exclusive Cap* involves the same parties, facts, and applicable laws as this appeal because the cases were consolidated and jointly decided by the trial court below.

were not permitted within 1,000 feet of any school. *Id.* at ___; slip op at 4; Royal Oak Ordinances, § 435-5(A)(5)(a). Consistent with the MRTMA, the City later adopted amendments to its zoning ordinance to allow for reductions of this 1,000-foot-buffer requirement on a case-by-case basis provided certain conditions were met. *Exclusive Cap*, ___ Mich App at ___; slip op at 4.

After the City enacted the marijuana ordinance, plaintiff was one of 31 applicants who applied for a license to operate a marijuana retail establishment within the City. The city manager was tasked with evaluating the applications and determining which applicants would be "best suited to operate in Royal Oak and in compliance with the state recreational marijuana law[.]" In making this determination, the city manager consulted and met with various municipal officers—known as the "Review Committee"—in several closed-door meetings. The City ultimately awarded the two retail licenses to intervening defendant-appellee PGSH Holdings, LLC (Gatsby), and another applicant. Plaintiff's application was denied because "[l]icenses were limited in availability," and "[l]imited green infrastructure was included in [its] plan."

Plaintiff filed suit, seeking declaratory and injunctive relief regarding the City's "enactment and application of unlawful criteria to govern the licensure of marijuana businesses in the City." In Count I, plaintiff alleged that the city manager and his "Ranking Committee" were considered a "public body" under the Open Meetings Act (OMA), MCL 15.261 *et seq.*, but failed to conduct their ranking of the applications in meetings open to the public. In Counts II and III, plaintiff asserted facial and as-applied challenges to the City's marijuana ordinance, claiming that the selection criteria were "not designed to assess which applicants [were] 'best suited to operate in compliance with [MRTMA]' in Royal Oak," and that the City's allowance of one of the new locations to be less than 1,000 feet from a school violated the MRTMA. In Counts IV and V, plaintiff claimed that the marijuana ordinance violated the dormant Commerce Clause and the Michigan Constitution because it discriminated against out-of-state residents in favor of Royal Oak residents and business owners.

The City moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that no OMA violation occurred because the city manager did not delegate his authority to implement the application process to the ranking committee, and made the ultimate ranking decisions alone. The City also contended that it had discretion to implement selection criteria that both complied with the MRTMA *and* satisfied the City's "own goals and particularized concerns," because its criteria were not impracticable and did not conflict with the MRTMA. Additionally, the fact that one of the proposed locations was within 1,000 feet of a school did not violate the MRTMA because the City's zoning ordinance permitted deviations from this requirement. Finally, the City argued that the marijuana ordinance did not violate the dormant Commerce Clause or Michigan Constitution because it did not contain a residency requirement. In later pleadings, the City also challenged plaintiff's standing relating to its constitutional arguments because its application for a marijuana retail license showed that its majority owners did, in fact, operate a business within Royal Oak.

The trial court granted summary disposition to the City under MCR 2.116(C)(8) and (10), finding: (1) the city manager was not a "public body" under the OMA; (2) the marijuana ordinance did not violate the MRTMA and the statute granted the City discretion to implement its own selection criteria; and (3) the marijuana ordinance did not contain a residency preference and plaintiff lacked standing to bring its constitutional claims. This appeal followed.

-3-

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *Id*. (Emphasis omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. "A motion under MCR 2.116(C)(10), on the other hand, tests the factual sufficiency of a claim." *Id*. (Emphasis omitted). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The motion may only be granted if there is no genuine issue of material fact. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

Statutory interpretation and the interpretation of municipal ordinances are questions of law that are also reviewed de novo. *Yellow Tail Ventures*, 344 Mich App at 700; *McMillan v Douglas*, 322 Mich App 354, 357; 913 NW2d 336 (2017). When a statute is passed into law by initiative, as is the case with the MRTMA, the intent of the electors governs the statute's interpretation. *Michigan v McQueen*, 493 Mich 135, 147; 828 NW2d 644 (2013). The interpretation must be drawn from the plain language of the statute, which "provides the most reliable evidence" of the electors' intent. *Id*. (quotation marks and citation omitted). If the language of the statute is unambiguous, courts must apply the language as plainly written. See *id*. The rules of statutory interpretation apply to the interpretation of an ordinance as well. *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 469-470; 965 NW2d 232 (2020).

Finally, we also "review[] de novo constitutional questions, including whether legislative acts violate the Commerce Clause[.]" *Wheeler v Charter Twp of Shelby*, 265 Mich App 657, 663-664; 697 NW2d 180 (2005).

## III. OMA VIOLATION

Plaintiff contends that the City violated the OMA because the city manager and ranking committee effectively rendered the licensing decisions in nonpublic meetings. We agree.

"The Open Meetings Act generally requires 'decisions' or 'deliberations' of a 'public body' to be open to the public." *Davis v Detroit Fin Review Team*, 296 Mich App 568, 576; 821 NW2d 896 (2012), citing MCL 15.262 and MCL 15.263. Relevant to this appeal, a "public body" under MCL 15.262(a), is "any state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council, that is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function . . . ." Thus, to be considered a public body under the OMA, an entity must: (1) "be a 'state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council[,]' " and (2) "be

'empowered . . . to exercise governmental or proprietary authority or perform a governmental or proprietary function,' and that power must derive from 'state constitution, statute, charter, ordinance, resolution, or rule . . . .' " *Herald Co v Bay City*, 463 Mich 111, 129; 614 NW2d 873 (2000) (ellipses added in *Herald*), quoting MCL 15.262(a).

A public body may also be created when one public body delegates authority to another entity. See *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 225-226; 507 NW2d 422 (1993) (holding that an individual member of the University of Michigan's Board of Regents was a "public body" because the Board of Regents, itself a public body, had delegated the job of selecting a university president to the single regent). To determine whether a delegated entity constitutes a public body, courts must consider "not only . . . the language of the ordinance or governing document[,]" but "must also consider how the public body and the entity to which it supposedly delegated authority actually operated." *Exclusive Cap*, ___ Mich App at ___; slip op at 22; see also *Pinebrook II*, 515 Mich at 464.

This Court, in *Exclusive Cap*, concluded that the city manager and ranking committee "acted as a public body subject to the OMA." *Exclusive Cap*, ___ Mich App at ___; slip op at 23. As noted earlier, plaintiff's case involves the same underlying facts and parties as *Exclusive Cap*. Thus, *Exclusive Cap* considered the exact decision made by the same city manager and committee that is the subject of this appeal. Although pending on appeal to our Supreme Court at this time, *Exclusive Cap* is a published decision, and, unless or until our Supreme Court overturns it, it is binding. See MCR 7.215(C)(2) and (J)(1). Accordingly, the trial court erred by granting summary disposition to the City regarding plaintiff's OMA violation claim.

## IV. MRTMA VIOLATIONS

Plaintiff also argues that the marijuana ordinance—both on its face and as applied— violated the MRTMA because (1) the City's selection process was not competitive, (2) the selection criteria did not relate to an applicant's compliance with the MRTMA, and (3) the City violated the MRMTA's 1,000-foot rule. We disagree.

## A. FACIAL CHALLENGE

The MRTMA permits municipalities to adopt recreational marijuana ordinances "that are not unreasonably impracticable and do not conflict with this act or with any rule promulgated pursuant to this act . . . ." MCL 333.27956(2). In the event a municipality elects to limit "the number of marihuana establishments within its boundaries," MCL 333.27956(1), as the City did here, "the municipality shall decide among competing applications *by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality*," MCL 333.27959(4) (emphasis added). The statute does not dictate the criteria to be used in establishing a "competitive process." See MCL 333.27956(2) and (3). Thus, "[t]he only relevant consideration is that any ordinance must not be 'unreasonably impracticable' or 'conflict' with the MRTMA." *Exclusive Cap*, ___ Mich App at ___; slip op at 18.

Consistent with MCL 333.27959(4), the City's marijuana ordinance outlined its "competitive process" for selecting applicants. See Royal Oak Ordinances, § 435-4(C)(4)(a)-(j). The marijuana ordinance also states, in relevant part, that "[t]he applicants and their applications

-5-

will be ranked in the order of *which is best suited to operate in compliance with the Act within the City* as determined by the City Manager or his or her designee." Royal Oak Ordinance § 435-4(C)(4) (emphasis added).

In *Exclusive Cap*, this Court concluded that the City's selection process was "competitive" in accordance with MCL 333.27959(4), reasoning:

> When the relevant language is read as whole, then, MCL 333.27959(4) dictates that the process adopted must evaluate which applicants offer the most favorable terms, as compared to others, for the purpose of identifying which applicants are best suited to operate in compliance with the MRTMA. In other words, any criteria adopted must bear some relation to determining who is best suited to operate in compliance with the act, and must also aid in evaluating who offers the most favorable terms.

> The marijuana ordinance's ten competitive criteria indicate that the ordinance does not lack a competitive process for selecting the applicants best suited to operate consistently with the MRTMA. See Royal Oak Ordinances, § 435-4(C)(4). On the contrary, many of the nine factors that call for a yes-or-no determination (out of 10 factors total) implicate varying degrees of compliance. For example, criterion (h) asks whether the applicant has taken steps to promote a successful workforce. Even if an applicant's response is affirmative, the way in which an applicant has met this end, and to what degree, would differentiate that applicant from others. The same may be said of responses to criteria (g) (future outreach), (i) (equity plans), and (j) (sustainable infrastructure), and to a lesser extent (c) (operating a business in Royal Oak), and (e) (commercial licenses). Further, consideration of the applicant's tax history, bankruptcy history, and criminal history potentially implicate variation and nuance. One bankruptcy is different than six. Someone owning property with a tax lien is different than a convicted tax cheat. [The plaintiff's] argument ignores these nuances and inherent differences implicated by the considerations that do not otherwise provide a numerical rank or value.

> Taken as a whole, the criteria serve as guideposts allowing a decision-maker to determine which applicants are most favorable for operating in compliance with the MRTMA, providing criteria an applicant may satisfy by varying degrees. Because the criteria allow for meaningful distinctions between applicants, the criteria are necessarily competitive. [*Exclusive Cap*, ___ Mich App at ___; slip op at 19.]

On appeal, plaintiff argues that *Exclusive Cap* failed to adequately address whether the City's "criteria and process sufficiently focused on what state law requires the competitive process's focus to be: suitability to comply with MRTMA in Royal Oak." This argument is misplaced. First, *Exclusive Cap* expressly held that the City's selection criteria were competitive and did not conflict with the MRTMA because they allowed the city manager "to determine which applicants are most favorable for operating in compliance with the MRTMA" within Royal Oak. *Exclusive* Cap, ___ Mich App at ___; slip op at 19. Second, in *Yellow Tail Ventures*, 344 Mich

-6-

App at 701, this Court rejected a substantially similar argument advanced by the plaintiff, concluding that the challenged selection criteria did not violate the MRTMA because the phrase "within the municipality" in MCL 333.27959(4) was a "qualifier" permitting "a municipality to craft criteria suited to its own local concerns, provided that the criteria conform to the other provisions of the MRTMA." *Id*. Because the City was permitted to establish criteria "suited to its own local concerns," *id*., and plaintiff has failed to allege that the challenged criteria in this case otherwise violated the MRTMA, the trial court did not err by granting summary disposition to the City on these grounds.

## B. AS-APPLIED CHALLENGES

Plaintiff also argues that, because the city manager admitted he only assessed whether applicants complied with the *marijuana ordinance*, he ignored the MRTMA's mandate to select applicants who were "best suited to operate in compliance with" the MRTMA. This same argument was raised in and decided by *Exclusive Cap*, ___ Mich App at ___; slip op at 20, which concluded that "[b]ecause the City's marijuana ordinance complied with the MRTMA's competitive-process requirement, and the city manager indicated that he selected applicants on the basis of who was best suited to comply with the ordinance, he neither violated the MRTMA nor acted outside his authority." *Id*. Thus, we are bound by that conclusion.

Additionally, plaintiff argues that the City violated the MRTMA's 1,000-foot buffer requirement by awarding a license to Gatsby, whose retail location was within 88 feet of a school. Again, *Exclusive Cap* addressed this same argument, concluding that the City's zoning ordinance permitted the reduction of the buffer requirement. *Exclusive Cap*, ___ Mich App at ___; slip op at 16. This Court further rejected the argument that the MRTMA required the municipality "to adopt an ordinance that reduces the distance requirement, as opposed to allowing a municipal body to make the decision." *Id*. (quotation marks and brackets omitted). This Court reasoned that "[t]he zoning ordinance then in effect allowed the City Commission to deviate from the buffer requirement" if certain criteria were met, which meant that the "provision, when implemented, reduced the buffer requirement of the MRTMA." *Id*. It further explained that, "[n]otably, the MRTMA does not specify the procedure by which an ordinance reducing the buffer requirement is adopted." *Id*. Thus, plaintiff's argument fails under *Exclusive Cap*'s binding authority. See MCR 7.215(C)(2).[3]

---

[3] We decline to address plaintiff's residential discrimination challenges under the dormant Commerce Clause and the Michigan Constitution because plaintiff lacks standing. "Standing generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury." *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket Nos. 165537, 165538, and 165964); slip op at 17 (quotation marks and citations omitted). "Under Michigan Law, standing is a limited, prudential doctrine, intended to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Id*. (quotation marks and citation omitted). Plaintiff has no injury from—and, therefore, no interest in—the alleged "residency preference" criterion because the record demonstrates that plaintiff's majority owners satisfied it with their longstanding businesses in

We reverse the trial court's grant of summary disposition on plaintiff's OMA claim and remand to the trial court to determine whether the issued licenses in this case should be invalidated under MCL 15.270(2). We affirm the trial court's order in all other respects. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello

---

Royal Oak. Because plaintiff was not injured by the criterion it challenges, it lacks standing to do so. See *id*.